WALDEN, APPELLEE AND CROSS-APPELLANT, *v.* THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE.
ELLIS, APPELLEE AND CROSS-APPELLANT, *v.* THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE.

[Cite as Walden *v.* State (1989), 47 Ohio St. 3d 47.]

(Nos. 88-1434 and 88-1440, 88-1435 and 88-1439—Submitted September 27, 1989—
Decided November 29, 1989.)

*Wristen & Ucker Co., L.P.A., David A. Ucker* and *Ellen L. Wristen,* for appellees and cross-appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, *Simon B. Karas* and *Mark T. D'Alessandro; Michael J. Miller,* prosecuting attorney, and *William J. Owen,* supplementary counsel, for appellant and cross-appellee.

*David L. Landefeld,* prosecuting attorney, urging reversal in case Nos. 88-1434 and 88-1435, and affirmance in case Nos. 88-1439 and 88-1440, for *amicus curiae* Ohio Prosecuting Attorneys Association.

H. BROWN, J. These cases present our first opportunity to construe Ohio's wrongful imprisonment statutes, R.C. 2305.02 and 2743.48. These statutes were added to the Revised Code in 1986 by Sub. H.B. No. 609 "to authorize civil actions against the state, for specified monetary amounts, in the Court of Claims by certain wrongfully imprisoned individuals" (141 Ohio Laws, Part III, 5351), replacing the former practice of compensating wrongfully imprisoned persons by *ad hoc* moral claims legislation. See, generally, Comment, Wrongful Incarceration In Ohio: Should There Be More Than A Moral Obligation to Compensate? (1982), 12 Cap. U. L. Rev. 255. Under the statutory scheme, a claimant must follow a two-step process.

In the first step, the claimant must bring an action in the court of common pleas to secure a determination that he is a wrongfully imprisoned individual entitled to compensation. As relevant here, a "wrongfully imprisoned individual" was defined in former R.C. 2743.48(A) as one who satisfied four criteria:

"(1) He was charged with a violation of a section of the Revised Code by an indictment or information prior to, or on or after, the effective date of this section, and the violation charged was an aggravated felony or felony.

"(2) He was found guilty of the particular charge or a lesser-included offense * * * and the offense of which he was found guilty was an aggravated felony or felony.

"(3) He was sentenced to an indefinite or definite term of imprisonment in a state penal or reformatory institution for the offense of which he was found guilty.

"(4) Subsequent to his sentencing and during or subsequent to his imprisonment, it was determined by a court of common pleas that the offense of which he was found guilty, including all lesser-included offenses, either was not committed by him or was not committed by any person."[1]

R.C. 2305.02 grants exclusive jurisdiction to the court of common pleas "to hear and determine an action or proceeding that is commenced by an

---

[1] The wrongful imprisonment statutes were amended by Am. H.B. No. 623, effective March 17, 1989, while these cases were pending. The amendments do not affect the language of those portions of the statutes at issue in the instant cases.

individual * * * that seeks a determination by the court that the offense of which he was found guilty, including all lesser-included offenses, either was not committed by him or was not committed by any person." Once the claimant secures this determination, R.C. 2743.48(D) provides that he "has and may file a civil action against the state, in the court of claims, to recover a sum of money * * *" in an amount fixed by R.C. 2743.48(E).

The issues now before this court all relate to the first stage of this process, the determination that "the offense of which * * * [the claimant] was found guilty, including all lesser-included offenses, either was not committed by him or was not committed by any person."

### I

In its first and second propositions of law, the state argues that a person acquitted by reason of self-defense is not within the definition of a "wrongfully imprisoned individual." It bases this argument on the manner in which self-defense is treated under Ohio criminal law.

Ohio is one of only two states which retains the common-law rule on self-defense. See *Martin* v. *Ohio* (1987), 480 U.S. 228, 236. In Ohio, self-defense is an affirmative defense which the defendant is required to prove by a preponderance of the evidence. *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 94, 21 OBR 386, 388, 488 N.E. 2d 166, 168, affirmed *Martin* v. *Ohio, supra.* In *State* v. *Poole* (1973), 33 Ohio St. 2d 18, 19, 62 O.O. 2d 340, 294 N.E. 2d 888, 889, we commented on the nature of affirmative defenses in the criminal law:

"As characterized by one authority, they represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter 'which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true.' "

Because R.C. 2305.02 and 2743.48 require a claimant to prove that "the *offense* of which he was found guilty * * * was not committed by him," (emphasis added) and not "the *crime* of which he was found guilty," the state contends that the General Assembly intended to exclude persons acquitted by reason of self-defense. Citing *Poole* and *Martin,* the state argues such persons have committed an "offense," but not a "crime."

We disagree. In construing the Revised Code, we are required to interpret words according to the rules of grammar and common usage unless they have a particular or technical meaning. R.C. 1.42. As a matter of common usage, the words "crime" and "offense" are synonymous. See *In re Jacoby* (1943), 74 Ohio App. 147, 150, 29 O.O. 305, 306, 57 N.E. 2d 932, 934. For example, the words "crime" and "offense" are used interchangeably in Crim. R. 7(D), and the word "offense" is used throughout R.C. Title 29 to refer to crimes. We see nothing in the language or purpose of R.C. 2305.02 and 2743.48 which would impart to the word "offense" any technical or particular meaning different from this common usage.

The state's fears that our holding will undermine the constitutional supports of Ohio's self-defense rule are unfounded. This argument, too, is based on a perceived distinction between "crime" and "offense." Our holding that a person who was acquitted by reason of self-defense is entitled to statutory compensation for wrongful imprisonment does no violence to the

United States Supreme Court's interpretation of the United States Constitution in *Martin* v. *Ohio.*

The state's final contention is that compensation of persons acquitted by reason of self-defense will open the public coffers to claims by persons acquitted by reason of insanity, entrapment or other affirmative defenses. Those questions are not before us. We hold today only that a person acquitted by reason of self-defense may seek compensation for wrongful imprisonment under R.C. 2305.02 and 2743.48. We express no opinion as to the eligibility of persons acquitted by reason of other affirmative defenses.

## II

Walden and Ellis, in their cross-appeals, argue that the judgments of acquittal in their new criminal trials should be given preclusive effect in the later proceedings under R.C. 2305.02. They claim that, because they had the burden of proving self-defense by a preponderance of the evidence at their criminal trials, the issue of their innocence has been litigated. The state responds that the language of R.C. 2305.02, as well as the common practice under the special moral claims bills which predated the statute, supports the view that the General Assembly intended a *de novo* determination of innocence as a prerequisite to recovery for wrongful imprisonment.

The doctrine of collateral estoppel, or issue preclusion, states that "if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. A party precluded under this principle from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked full and fair opportunity to litigate that issue in the first action, or unless other circumstances justify according him an opportunity to relitigate that issue." *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71, 74, 6 O.O. 3d 274, 276, 369 N.E. 2d 776, 777-778; see, also, *Trautwein* v. *Sorgenfrei* (1979), 58 Ohio St. 2d 493, 12 O.O. 3d 403, 391 N.E. 2d 326.

In its opinions, the court of appeals below emphasized the qualitative differences between criminal prosecutions and civil litigation as the reason for its holdings:

"In the criminal proceeding, the burden of proof is upon the state * * *. Moreover, self-incrimination, privilege, and discovery rules are different. In the criminal proceeding, the state may not depose the defendant nor require the defendant to testify involuntarily.

"In a civil proceeding, not only is the burden of proof usually different, it being placed upon plaintiff * * * but also the rules concerning trial procedure, discovery, evidence and constitutional safeguards differ in important aspects."

Walden and Ellis argue that, because they testified in their own defense at trial and were subject to cross-examination, the factors discussed by the court below are not "viable objections" to the application of collateral estoppel. Therefore, they contend, the state has already had a full and fair opportunity to litigate the issue of their innocence. We do not agree.

As a general rule, a verdict or judgment of acquittal in a criminal trial is a determination that the state has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent. *Schrader* v.

*Equitable Life Assurance Soc.* (1985), 20 Ohio St. 3d 41, 46, 20 OBR 343, 347-348, 485 N.E. 2d 1031, 1035-1036; see, also, *Johns* v. *State* (1981), 67 Ohio St. 2d 325, 328, 21 O.O. 3d 204, 207, 423 N.E. 2d 863, 866; *Ohio State Bar Assn.* v. *Weaver* (1975), 41 Ohio St. 2d 97, 99-100, 70 O.O. 2d 175, 177, 322 N.E. 2d 665, 667; Friedenthal, Kane & Miller, Civil Procedure (1985) 665, Section 14.10. This is why the General Assembly intended in R.C. 2305.02 and 2743.48(A)(4) that a claimant must first affirmatively prove her innocence by a preponderance of the evidence.

Where the defendant has raised an affirmative defense, a verdict or judgment of acquittal can mean either that the defendant has proved the affirmative defense by a preponderance of the evidence *or* that the state has failed to prove all the elements of the crime beyond a reasonable doubt. Ellis was acquitted by a general verdict of "not guilty," and there is no indication from the record whether it was based on self-defense or reasonable doubt. In Walden's case, Judge Gillie's opinion speaks both in terms of self-defense and reasonable doubt, and it is not clear on which grounds the judgment rested.

Even if we were to accept the contention that Walden, Ellis, or both, affirmatively proved self-defense at trial, there are other reasons not to apply collateral estoppel. First, this court has long recognized that the qualitative differences between civil and criminal proceedings, which were succinctly summarized by the court of appeals below, militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation. *Schrader, supra,* at 46, 20 OBR at 347-348, 485 N.E. 2d at 1035-1036 (dictum: acquittal of accused murderer is not binding in subsequent action in probate court to determine succession to victim's property); *Johns, supra,* at paragraph two of the syllabus (judgment in habeas corpus not *res judicata* in subsequent civil action pursuant to special moral claims bill); *Weaver, supra,* at 99-100, 70 O.O. 2d at 177, 322 N.E. 2d at 667 (acquittal on criminal charges not *res judicata* in attorney disciplinary proceeding arising out of the same transaction); see, also, Friedenthal, Kane & Miller, *supra.*

Second, if we were to accept the contention that collateral estoppel applies in proceedings under R.C. 2305.02, we would, in effect, be creating a preferred class of wrongful imprisonment claimants. In enacting R.C. 2305.02, the General Assembly intended that the court of common pleas actively separate those who were wrongfully imprisoned from those who have merely avoided criminal liability. We discern no purpose of the statute which would be served by a rule which would allow a person acquitted by reason of self-defense to, in effect, skip this step and go directly to the Court of Claims.

Finally, it should be noted that the state is unable to appeal a final verdict in a criminal prosecution. R.C. 2945.67(A). Because of this prohibition, the state has not had a fair opportunity to litigate the issue of either Walden's or Ellis's innocence because it cannot seek correction of errors by the trial court which might have led to erroneous acquittals.

Accordingly, we hold that where a person claiming compensation for wrongful imprisonment has presented an affirmative defense of self-defense at his criminal trial, and has obtained a judgment of acquittal, that judgment is not to be given preclusive effect in a proceeding under R.C. 2305.02.

## III

In its third proposition of law, the

state contends that the claimant should be held to a "clear and convincing" standard of proof in proceedings under R.C. 2305.02. This issue was not briefed in the court below, but was apparently argued orally. We also note that the state has advanced this position in other wrongful imprisonment cases. *Page* v. *State* (Aug. 8, 1989), Franklin App. No. 89AP-222, unreported; *Mueller* v. *State* (Dec. 12, 1988), Warren App. No. CA88-05-037, unreported.

The state bases its argument on a difference in wording between R.C. 2305.02 and 2743.48. R.C. 2743.48(D) refers to a "civil action" in the Court of Claims, while R.C. 2305.02 refers only to an "action." The state argues that the General Assembly used the words "civil action" to invoke the "preponderance" standard in R.C. 2743.48. From this, it reasons that the lack of the word "civil" before "action" in R.C. 2305.02 must indicate a different standard of proof. It also contends that a clear and convincing standard is appropriate because "the nature of the claim is essentially equitable" (citing interpretations of wrongful imprisonment statutes from other jurisdictions).

We reject the state's argument. The General Assembly, had it wanted to do so, knew how to specify a "clear and convincing" standard. A review of the Revised Code reveals at least nineteen sections in which the General Assembly has specified a "clear and convincing" standard by using the words "clear and convincing." See, *e.g.*, R.C. 709.07(D) (petition to enjoin annexation); 1533.92 (appeal from denial of fishing tournament permit); 1701.59 (breach of fiduciary duty by corporate directors); 2307.80 (punitive damages in products liability actions); 3111.03 (rebuttal of presumption of paternity); 4731.22 (summary suspension of license to practice medicine); 5122.15 (civil commitment of mentally ill person). Accordingly, it is clear that the General Assembly intended to apply the usual preponderance of the evidence standard to civil proceedings under R.C. 2305.02.

Further, a claim for wrongful imprisonment is not "essentially equitable." The action created by R.C. 2305.02 and 2743.48 is a waiver of the state's common-law sovereign immunity, and has no parallel in the ancient dual system of law and equity.[2]

We therefore hold that, in a proceeding under R.C. 2305.02, the claimant bears the burden of proving his innocence by a preponderance of the evidence.

Accordingly, the judgments of the court of appeals are affirmed.

*Judgments affirmed.*

MOYER, C.J., SWEENEY and WRIGHT, JJ., concur.

HOLMES, DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I concur in the conclusions reached by the majority in Parts II and III of the opinion; however, I dissent as to the majority's determination that Walden and Ellis were wrongfully imprisoned individuals pursuant to R.C. 2305.02 and 2743.48.

I agree with the well-reasoned dissent of Justice Resnick, but wish to add a few comments in emphasis of such dissent.

---

[2] We express no opinion on the question of whether there is a right to a jury trial in a proceeding under R.C. 2305.02, as this question is not presented for our review.

In my view the court of appeals erred in concluding that the defendants' sustaining their burden of proving self-defense establishes that an offense had not been committed. Ohio law provides that a showing of self-defense may relieve a person from the criminal responsibility for having committed an offense, but it does not negate the offense having been committed.

The court of appeals incorrectly reached the result that the legislature intended to use the term "offense" as synonymous with "crime" and that an acquittal of the crime also establishes that an offense was not committed. The legislature chose specific words requiring that the person show that the offense "either was not committed by him or was not committed by any person." If the legislature had intended that the person merely show that he did not commit a "crime," the legislature could have used words to that effect.

The court of appeals and this court should accord the word "offense" the meaning ascribed to it by this court in self-defense cases. *State* v. *Poole* (1973), 33 Ohio St. 2d 18, 62 O.O. 2d 340, 294 N.E. 2d 888; *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 21 OBR 386, 488 N.E. 2d 166. An offense is made up of its elements, and here all of these elements were proved. In that criminal punishment was not ultimately fully imposed here does not change that result. This is not the type of situation as envisioned by the legislature, for which compensation is provided. This is not the case of mistaken identity, or the case of where facts show that the crime alleged in the indictment for which the defendant was convicted in fact did not occur.

If there is ambiguity as to whether the legislature intended affirmative-defense acquittals to be included within the meaning of this section of law, this court should not supply the answer for the legislature. Here a holding that Walden and Ellis could not present a claim under this statute would not prevent them from presenting applications to the legislature for special moral claims bills. This statute being considered by this court is a particularized statute providing a remedy against the state and must be strictly construed in its interpretation. The interpretation by the court of appeals, and this court in affirmance thereof, is anything but strict in construction of these statutes.

I would reverse the judgments of the court of appeals.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur with the majority that a judgment of acquittal in a criminal trial is not to be given preclusive effect in an R.C. 2305.02 proceeding. I also agree that a claimant in such a proceeding bears the burden of proving his or her innocence by a preponderance rather than by clear and convincing evidence. However, I disagree with the majority's conclusion that a person who is acquitted by reason of self-defense may seek compensation for wrongful imprisonment under R.C. 2305.02 and 2743.48.

While I agree with the majority that "offense" and "crime" generally are synonymous, I do not believe that the. General Assembly intended the wrongful imprisonment statutes to compensate individuals such as Walden and Ellis.

Self-defense in Ohio does not negate the fact that an offense or, if you will, a "crime," was committed. Instead, it means that the defendant who committed the offense will not be punished where the affirmative de-

fense of self-defense is established by a preponderance of the evidence.

A person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proving each and every element of the offense is upon the prosecution. R.C. 2901.05(A). As the majority notes, the burden of proof regarding affirmative defenses is different in Ohio than in most other jurisdictions. In Ohio, the defendant not only has the burden of going forward with the evidence of an affirmative defense, but also has the burden of proving the defense by a preponderance of the evidence. R.C. 2901.05(A). Ohio is in a very small minority of states which place the burden of proof by a preponderance of the evidence on the defendant regarding the affirmative defense of self-defense. Other states "have abandoned the common-law rule and require the prosecution to prove the absence of self-defense when it is properly raised by the defendant. * * *" *Martin* v. *Ohio* (1987), 480 U.S. 228, 236. Requiring the defendant to prove self-defense has been held to be constitutional. *Martin* v. *Ohio, supra; State* v. *Martin* (1986), 21 Ohio St. 3d 91, 21 OBR 386, 488 N.E. 2d 166.

Self-defense in Ohio does not "seek to negate any of the elements of the offense which the state is required to prove." *State* v. *Martin, supra,* at 94, 21 OBR at 388, 488 N.E. 2d at 168. It is an affirmative defense which involves "* * * an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." R.C. 2901.05(C)(2). Self-defense is a " 'justification for admitted conduct.' Self-defense represents more than a 'denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged * * *.' * * *

Rather, we stated in [*State* v.] *Poole* [(1973), 33 Ohio St. 2d 18, 62 O.O. 2d 340, 294 N.E. 2d 888], this defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims *exempt him from liability. * * * The elements of the crime and the existence of self-defense are separate issues. Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged. * * *"* (Emphasis added.) *State* v. *Martin, supra,* at 94, 21 OBR at 388, 488 N.E. 2d at 168.

In the case before us, Walden and Ellis committed the acts which constitute the offenses with which they were charged. However, they each successfully established the defense of self-defense. Thus, their successful assertion of self-defense does not turn on the fact that the offense was not committed. Instead, it means that although the offense was committed, the person who committed it will not be criminally punished.

However, it is interesting to note that a state which deems that self-defense, if successfully asserted, negates an element of the offense charged could still find that the offense was indeed not committed. For example, in California, "[s]elf-defense does not *excuse* murder or manslaughter. Murder and manslaughter are defined as *unlawful* killings. ([Cal.] Pen. Code, §§ 187, 192.) A person who kills in *lawful* self-defense does not do the definitional 'act' of either crime. A person innocent because of justifiable homicide (Pen. Code, § 197) can demonstrate the crime charged 'was not committed at all.' (Pen. Code, § 4900.) For that reason, a person erroneously imprisoned for justifiable homicide is not per se ineligible for compensation pursuant to Penal Code section 4900 et seq." (Emphasis *sic.*)

*Diola* v. *Cal. Bd. of Control* (1982), 135 Cal. App. 3d 580, 585, 185 Cal. Rptr. 511, 515-516.[3] However, this is not the case in Ohio.

Under R.C. 2743.48(A)(5), a claim for wrongful imprisonment does not exist unless "* * * it was determined by a court of common pleas that the offense of which he [the claimant] was found guilty, including all lesser-included offenses, *either was not committed by him or was not committed by any person.*" (Emphasis added.) .

In Ohio, the establishment of self-defense will never qualify a person for an action under this statute since a court could not find that the offense was not committed by the actor. Rather, the actor in such a case admits that he committed the offense but contends that his behavior is excused because he did it in self-defense. In other words, an offense was committed but the actor will not be held accountable.

I do not believe, therefore, that the General Assembly intended to compensate individuals such as Walden and Ellis. The General Assembly is presumed to know the common law when enacting legislation. See *Davis* v. *Justice* (1877), 31 Ohio St. 359, 364. Thus, the statutes at issue should be construed with the common law in mind. Both R.C. 2305.02 and R.C. 2743.48 provide that the party must show that the offense of which he was found guilty "* * * either was not committed by him or was not committed by any person." In view of Ohio's long-standing law that self-defense does not mean that the offense was not committed but instead justifies or excuses it, I cannot agree with the majority that the General Assembly intended to compensate individuals who admit committing the offense for which they were charged but successfully raise the issue of self-defense.

A review of "moral claims" bills passed by the General Assembly prior to the enactment of R.C. 2305.02 and 2743.48 shows that compensation could be awarded to individuals who were found not to have committed the offense either because another person confessed to the crime or because new evidence established that they did not commit the crime.[4] The bills generally did not compensate individuals who admitted committing the offense but who nevertheless successfully established self-defense.

The purpose of "moral claims" legislation regarding wrongful imprisonment is to compensate individuals who were erroneously imprisoned either for a crime another person committed or for a crime which was not committed at all. Awards under this statute should be made because "* * * our system of laws recognizes that our citizens deserve redress not only for claims legally enforceable but also for moral obligations. * * *" *Hoffner* v. *New York* (Ct. of Claims 1955), 207 Misc. 1070, 1072, 142 N.Y. Supp. 2d 630, 631. Such an award, in those circumstances, should be readily made. "The most serious and best known cases of erroneous confinement result from the conviction

---

[3] Compare *Diola, supra,* with *Ebberts* v. *Cal. Bd. of Control* (1978), 84 Cal. App. 3d 329, 335, 148 Cal. Rptr. 543, 546, where a California court of appeals held that a plea of insanity does not mean that the acts characterizing the crime were not committed at all, but instead is a plea of confession and avoidance.

[4] See, *e.g.,* Am. Sub. H.B. No. 123 (139 Ohio Laws, Part I, 1896, 1897); Am. Sub. H.B. No. 124 (140 Ohio Laws, Part I, 2031-2032); Am. H.B. No. 832 (140 Ohio Laws, Part II, 4931-4932); Am. H.B. No. 539 (141 Ohio Laws, Part III, 4878).

of the innocent. Some of the more common factors known to have been responsible for persuading the finder of fact of the guilt of an innocent man include misidentification, circumstantial evidence, frame-ups, overzealous police or prosecutors, prior convictions or unsavory records, community opinion demanding a conviction, and unreliability of expert evidence. In addition, erroneous convictions result from guilty pleas and confessions by innocent persons, or from the use of a false alibi by an innocent accused." Note, Compensation of Persons Erroneously Confined by the State (1970), 118 U. Pa. L. Rev. 1091, 1094.

In cases which may involve the affirmative defense of self-defense, the state has little choice but to prosecute after the grand jury returns an indictment. Although in the instant case it is presumed that the state knew that self-defense would be raised by each defendant, as noted above, the defendant has the burden of proving this affirmative defense. I do not believe that the state should now have to pay damages for pursuing convictions which were obtained pursuant to an indictment and in good faith.

Therefore, for the foregoing reasons, I must respectfully dissent from Part I of the majority opinion to the extent that it permits compensation for persons acquitted by reason of self-defense.

HOLMES and DOUGLAS, JJ., concur in the foregoing opinion.