Petitioner-appellant, Dale A. Palmer, Sr., appeals an order of the Medina County Court of Common Pleas that denied his petition to be declared a wrongfully imprisoned individual. We affirm.
Following a jury trial in 1994, Appellant was convicted of one count of Felonious Sexual Penetration, a violation of R.C.2907.12(A)(1)(b). The State's case included statements by the victim, Appellant's daughter Lindsey Palmer. The jury concluded that Appellant committed the offense against a victim thirteen years of age or younger by force or threat of force. Pursuant to R.C. 2907.12(B), the trial court sentenced Appellant to a life term of incarceration. This court affirmed his conviction inState v. Palmer (Feb. 8, 1995), Medina App. No. 2323-M, unreported.
In 1995, Lindsey recanted her prior testimony identifying Appellant as her assailant. On October 31, 1995, Appellant moved for a new trial pursuant to Crim.R. 33(A)(6) and 33(B), alleging the discovery of new evidence that he was unavoidably prevented from discovering within one hundred twenty days of his conviction. After conducting a hearing, the trial court granted a new trial. The State subsequently dismissed the charge against Appellant based on the conclusion that "post-indictment investigation reveal[ed] that the State could not prove its case beyond a reasonable doubt since the victim recanted her testimony."
Appellant petitioned the trial court on February 18, 1997, for a declaration of wrongful imprisonment pursuant to R.C.2743.48(A). Appellant moved for summary judgment and the State responded in opposition. On October 22, 1997, the trial court denied summary judgment, concluding that a genuine issue of material fact existed with respect to whether Appellant had proved that he did not commit the underlying crime. The outstanding issue was submitted to the court on the parties' briefs, and transcripts of the earlier proceedings were admitted into evidence. The trial court denied the petition on June 18, 1999. Appellant timely appealed and has argued one assignment of error.
ASSIGNMENT OF ERROR
The trial court erred when it found that Dale Palmer, Sr. was not a wrongfully imprisoned person.
In his assignment of error, Appellant has argued that the trial court's determination that he did not fall within the definition of a wrongfully imprisoned individual was not supported by the evidence. We disagree.
The Supreme Court of Ohio has summarized the process involved in bringing a statutory cause of action for wrongful imprisonment as follows:
 The Ohio Revised Code provides a two-step process whereby a person claiming wrongful imprisonment may sue the state of
 Ohio for damages incurred due to the alleged wrongful imprisonment. * * * The first action, in the common pleas court under R.C. 2305.02, seeks a preliminary factual determination of wrongful imprisonment; the second action, in the Court of Claims under R.C. 2743.48, provides for damages.
 Prior to filing suit in the Court of Claims for damages, a petitioner must establish the following: (1) the petitioner was convicted of a felony; (2) the petitioner was sentenced for that conviction; (3) the conviction was vacated, dismissed, or reversed; (4) no further prosecution was attempted or allowed for that conviction or any act associated with that conviction; and (5) the offense of which the petitioner was found guilty was not committed by the petitioner or was not committed at all. * * * The petitioner carries the burden of proof in affirmatively establishing his or her innocence under R.C. 2743.48(A)(5). If the common pleas court makes such a finding, then the petitioner may file a civil suit for money damages against the state. * * *
 The claim must be commenced in the Court of Claims within two years of the common pleas court's determination that the petitioner had been wrongfully incarcerated.
(Citations omitted.) State ex rel. Tubbs Jones v. Suster (1998),84 Ohio St.3d 70, 72.
A de novo determination of innocence is prerequisite to a declaration of status as a wrongfully imprisoned individual.Chandler v. State (1994), 95 Ohio App.3d 142, 149. See, also,Walden v. State (1989), 47 Ohio St.3d 47, 52. "[A] verdict or judgment of acquittal in a criminal trial is a determination that the state has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent." Walden, supra, at 52. Consequently, a judgment of acquittal subsequent to conviction is not determinative of innocence on a petition under R.C. 2743.48(A). See id. at paragraph two of the syllabus.
Appellant sustained his burden of proof in demonstrating that Lindsey's recantation constituted newly discovered evidence that materially affected substantial rights. See Crim. R. 33(A). He has argued that the trial court's conclusion that Lindsey's recantation warranted a new trial, coupled with his burden to prove his innocence by only a preponderance of the evidence, mandated the conclusion that he had proved his innocence as required by R.C. 2743.48(A)(5). Appellant has argued that given the evidence presented to the trial court in his petition, the trial court erroneously concluded that that he had not proved that he was a wrongfully imprisoned individual. Specifically, He maintains that the court's assessment of the credibility of the evidence was in error. Appellant has suggested, and the State has agreed, that this court should review whether the trial court's determination constituted an abuse of discretion. Because Appellant's argument focuses on the trial court's resolution of the evidence presented in a fact-finding capacity, however, it is more appropriately construed as an argument that the court's decision was against the manifest weight of the evidence.[1]
This court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence.Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. We must, therefore:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
Frederick, supra, quoting State v. Shue (1994), 97 Ohio App.3d 459,466. During the trial that led to Appellant's conviction, Lindsey Palmer testified that she had been touched by her father on more than one occasion. Lindsey described the locations of the alleged acts with detail and stated that Appellant threatened her physically if she told anyone. Dr. Amy Richardson, who examined Lindsey for physical evidence of sexual abuse, testified that she observed evidence of penetrating vaginal and anal trauma. She opined that some of Lindsey's injuries indicated chronic abuse rather than a single incident of trauma.
Dr. Suzanne LeSure, a psychologist who treated Lindsey in the months after the allegations surfaced, testified that Lindsey identified the areas in which she had received "bad touches" by drawing red marks on a picture included in Dr. LeSure's assessment protocol. Lindsey indicated that one of these marks represented tangled hair, but other marks were consistent with Dr. Richardson's physical findings. Lindsey also drew a picture of a larger individual with a hand reaching toward the genital region of a child. Dr. LeSure noted that Lindsey described the alleged abuse with a high degree of conceptual detail. She opined that Lindsey's verbalizations and her behavior were "sexually different than the behavior of [a] typical [child]," and were "very consistent with being sexually abused." Although reluctant to identify the perpetrator at first, Lindsey eventually identified her father by passing a note to Dr. LeSure.
Dr. Dawn Lord, a psychologist with expertise in treating child victims of trauma, abuse, and neglect, was called as an expert witness by the defense. Dr. Lord reviewed categories of possible interview contamination in sexual abuse cases and opined that Dr. LeSure's methodology was flawed and would tend to produce contamination errors. Dr. Lord admitted, however, that she was unfamiliar with specific instances of possible contamination in this case and that she had not interviewed Lindsey. Further, Dr. LeSure identified sources of potential contamination during her testimony and reviewed the steps that she had taken to avoid a biased result.
During July 1996, a hearing was held on Appellant's motion for a new trial. At that time, Lindsay stated that her previous testimony was false. Julie Sutherland (f.k.a. Palmer), recalled that during 1995 her daughter changed her story as follows:
 I was questioning Lindsey about * * * another incident when someone was touching another child, and I was asking, or explaining to Lindsey that somebody else had accused somebody of touching them, and I asked Lindsey what she thought.
 She said, what if they lied, she asked me, what if that child lied.
Why would she lie about something?
Because I lied.
 I said, what do you mean[?] I was lost at first, I didn't know what she was talking about, you know, and I questioned her further, and she said, I lied about my dad, that my dad never touched me.
Ms. Sutherland contacted Dr. LeSure, who met with Lindsey and then contacted the State. Ms. Sutherland recalled that Lindsey had not wavered in her testimony since recanting the allegations and that her behavior had improved. She stated that she believed Lindsey "100 percent now." Although Lindsey spoke with her father twice weekly and corresponded with him on a regular basis, Ms. Sutherland stated that she was not aware of any attempt on Appellant's part to coerce Lindsey to recant.
Lindsey stated that she fabricated the allegations against her father in response to a doctor's statement that she had been "touched." She recalled her trial testimony in detail and testified that she "had to make something up * * * [b]ecause [she] told everyone that he did it." Lindsey disavowed that she had been abused by her father and, further, that she had ever been touched improperly. She stated that her recantation was motivated by guilt:
Q: Why did you feel bad because your dad was in jail?
 A: Because I am the one that made him go to jail for nothing.
Q: You made him go to jail for nothing?
A: Yeah.
Q: Why do you think you made him go to jail for nothing?
 A: Because the doctor said that someone touched me, and then I just blamed it on him.
* * *
I don't remember anybody ever touching me.
Dr. Stephen Guertin, who examined Lindsey after she recanted her testimony, testified that Lindsey showed no physical signs of sexual abuse. He opined that Dr. Richardson's earlier findings were observations consistent with normal development in children who have not been abused. He also noted that Dr. Richardson's interpretations of some of her observations were outdated by current medical norms. He acknowledged, however, that physical signs of abuse can only be detected three years after the fact in twenty to thirty percent of child sexual abuse cases. Dr. Richardson stood by the findings of her 1992 examination and emphasized that while she had described some of her physical observations to Lindsey, it was not her practice to inform children that they had been molested.
Dr. LeSure met with Lindsey during months immediately following her recantation. She observed that Lindsey's statements were inconsistent during the first four visits, but that a consistent story had emerged by the time the State was contacted in late June. Dr. LeSure noted that even in cases in which the perpetrator of sexual abuse has confessed, twenty-two percent of child victims recant at some point. She also recalled that Lindsey's memory of the protocol conducted by Dr. LeSure prior to trial was initially vague and that she seemed surprised by the materials. Dr. LeSure observed that the level of detail in Lindsey's testimony was unexpected.
The outcome of Appellant's motion for a new trial was not tantamount to proof of his innocence. Further, conflicting evidence was presented with respect to possible contamination errors in Lindsey's psychological and medical assessments. A judgment is not against the manifest weight of the evidence merely because the trier of fact chose to prefer one version of testimony to another. See State v. Warren (1995), 106 Ohio App.3d 753, 760. Our review of the record indicates that this is not the exceptional case in which the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. Zep Mfg. Co. (1984),14 Ohio App.3d 222, 226, quoting Royer v. Bd. of Edn. (1977),51 Ohio App.2d 17, 20. Accordingly, Appellant's assignment of error is overruled.
Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
LYNN C. SLABY
FOR THE COURT WHITMORE, J.
BATCHELDER, J.
CONCUR
[1] The argument that a judgment is against the manifest weight of the evidence takes issue with the resolution of conflicts in the evidence reached by the trier of fact. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence,
offered in a trial, to support one side of the issue rather than the other.'" Id., quoting Black's Law Dictionary (6 Ed. 1990) 1433. In contrast, a review of the sufficiency of the evidence requires a legal determination as to whether the evidence is adequate to support a verdict. State v. Thompkins,78 Ohio St.3d at 386. As distinguished from the underlying criminal trial, the petitioner in an action under R.C. 2743.48(A) bears the burden of proving by a preponderance of the evidence that he did not commit the offenses of which he has been convicted. The state did not bear the burden of proof in this case, and, therefore, a sufficiency analysis of Appellant's arguments is inappropriate. Further, the trial court concluded that the Appellant did not meet the burden of proof as to each element of the case. Given this posture, it is imprecise to question whether "some competent, credible evidence going to all of the essential elements of thecase" was present. (Emphasis added.) See, e.g., C.E. Morris Co.v. Foley Construction. Co. (1978), 54 Ohio St.2d 279, syllabus.