BUNDY, APPELLEE, *v.* THE STATE OF OHIO, APPELLANT.

[Cite as *Bundy v. State*, 143 Ohio St.3d 237, 2015-Ohio-2138.]

(No. 2014-0189—Submitted February 4, 2015—Decided June 4, 2015.)

O'CONNOR, C.J.

{¶ 1} This case arises from a civil action by appellee, David Bundy, seeking a declaratory judgment that he was a "wrongfully imprisoned individual" within the meaning of R.C. 2743.48. Bundy claims eligibility, as a wrongfully imprisoned individual, to seek compensation from appellant, the state of Ohio, for the prison time he served before the reversal of his conviction for failure to register as a sex offender pursuant to our decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753. The issue presented in this appeal is whether the invalidation of a statute on constitutional grounds requires the conclusion that

any criminal offenses predicated upon that statute were never committed, thereby satisfying the actual-innocence standard of R.C. 2743.48(A)(5). We hold that it does not, and we therefore reverse the judgment of the court of appeals.

## RELEVANT BACKGROUND

{¶ 2} The parties agree on the following facts.

{¶ 3} Bundy was classified as a sexually oriented offender under Megan's Law, Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2601. Pursuant to the versions of R.C. 2950.04 and 2950.06 in effect at that time, Bundy was required to register with the sheriff in any county where he came to temporarily or permanently reside, and he was required to verify his address in October of every year. *See State v. Cook*, 83 Ohio St.3d 404, 408, 700 N.E.2d 570 (1998) (upholding retroactive application of registration and address-verification statutes).

{¶ 4} In November 2003, Bundy pleaded guilty to a fifth-degree felony violation of R.C. 2950.04 for failing to register with the county sheriff and was sentenced to five years of community control.

{¶ 5} In 2007, the General Assembly repealed Megan's Law, effective January 1, 2008, and replaced it with new standards for sex-offender classification and registration pursuant to the federal Adam Walsh Child Protection and Safety Act, Section 16901 et seq., Title 42, U.S.Code. 2007 Am.Sub.S.B. No. 10. *See also Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, at ¶ 18–20. This new classification scheme, known as Ohio's Adam Walsh Act ("AWA"), was codified at R.C. Chapter 2950. The new standards applied retroactively, and the attorney general's office was charged with reclassifying all previously convicted sex offenders in conformity with the tiered system of the AWA. R.C. 2950.031; R.C. 2950.032. *See also Bodyke* at ¶ 22. Accordingly, the attorney general notified Bundy at the end of 2007 that he had been reclassified as a Tier II sex offender. As a consequence of this new classification, Bundy's obligation under R.C. 2950.06 to periodically verify his address increased from a frequency of once every year to once every 180 days. Bundy's next verification date was set for March 14, 2008.

{¶ 6} Bundy failed to verify his address with the county sheriff in March 2008, and he was charged with a third-degree felony violation of R.C. 2950.06. In a bench trial in October 2008, Bundy was convicted and sentenced to three years in prison. The trial court ordered Bundy's sentence to be served concurrently with a one-year prison sentence from a separate case that is not at issue in the current appeal.

{¶ 7} The Second District Court of Appeals affirmed Bundy's address-verification conviction on appeal, holding that the reclassification provisions and new registration requirements were constitutionally sound. *State v. Bundy*, 2d Dist.

Montgomery Nos. 23063 and 23064, 2009-Ohio-5395, 2009 WL 3246844. We accepted Bundy's discretionary appeal and held the cause pending our decision in *Bodyke*. *State v. Bundy*, 124 Ohio St.3d 1473, 2010-Ohio-354, 921 N.E.2d 245.

{¶ 8} In *Bodyke*, we held that the sex-offender reclassification process of the AWA, codified in R.C. 2950.031 and 2950.032, violated the separation-of-powers doctrine. *Id.* at paragraphs two and three of the syllabus. As a result of the constitutional infirmity of Bundy's reclassification under the AWA, we reversed Bundy's conviction. *In re Sexual–Offender Reclassification Cases*, 126 Ohio St.3d 322, 2010-Ohio-3753, 933 N.E.2d 801, ¶ 55. On remand to the Montgomery County Court of Common Pleas, the state dismissed the address-verification charge without prejudice. Bundy was released from prison in September 2010.

{¶ 9} In June 2011, Bundy filed a complaint in the court of common pleas seeking a declaration pursuant to R.C. 2743.48 that he had been wrongfully imprisoned for his failure to comply with the requirements of the AWA and that he was eligible to proceed for monetary relief against the state in the Court of Claims. Bundy moved for summary judgment, arguing that *Bodyke* rendered the AWA reclassification process void ab initio, requiring the conclusion that Bundy had not violated any criminal law. The state opposed Bundy's motion and filed a cross-motion for summary judgment, arguing that the mere repeal or invalidation of a statute does not require a finding that defendants whose convictions were predicated upon the statute were factually innocent.

{¶ 10} The trial court determined that Bundy had not been wrongfully imprisoned while he was serving his concurrent one-year sentence from a separate case. But with respect to the portion of Bundy's incarceration that was solely attributable to his AWA address-verification violation, the trial court found Bundy's argument to be meritorious on the authority of three recent decisions from the Eighth District Court of Appeals: *Ballard v. State*, 8th Dist. Cuyahoga No. 97882, 2012-Ohio-3086, 2012 WL 2582331; *Johnson v. State*, 8th Dist. Cuyahoga No. 98050, 2012-Ohio-3964, 2012 WL 3775972; and *Mohammad v. State*, 8th Dist. Cuyahoga No. 98655, 2012-Ohio-5517, 2012 WL 5988828. In these cases, the Eighth District held that the invalidation of certain provisions of the AWA on constitutional grounds caused any guilty pleas to violations of those provisions to become legal nullities, and the pleas therefore did "not exist for purposes of determining whether a person has the right to seek compensation under R.C. 2743.48." *Mohammad* at ¶ 18, citing *Ballard* and *Johnson*.

{¶ 11} The trial court noted that Bundy's conviction was in conformity with then-existing law, but pursuant to *Ballard, Johnson*, and *Mohammad*, the court determined that the invalidation of the law required the conclusion that no violation had been committed. The trial court therefore declared Bundy to be a wrongfully imprisoned individual. The state appealed.

{¶ 12} While the state's appeal was pending before the Second District Court of Appeals, this court summarily reversed *Ballard, Johnson,* and *Mohammad* based on our decision in *Dunbar v. State,* 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111. *Ballard v. State,* 136 Ohio St.3d 83, 2013-Ohio-2412, 990 N.E.2d 590; *Johnson v. State,* 136 Ohio St.3d 84, 2013-Ohio-2413, 990 N.E.2d 590; *Mohammad v. State,* 136 Ohio St.3d 326, 2013-Ohio-3669, 995 N.E.2d 228. In *Dunbar,* we held that vacating a guilty plea does not erase the plea as though it never existed, *id.* at ¶ 15, and "a person who has pled guilty to an offense is not eligible to be declared a wrongfully imprisoned individual," *id.* at ¶ 19.

{¶ 13} The Second District Court of Appeals reviewed the state's appeal in light of *Dunbar,* but found *Dunbar*'s holding to be inapplicable because Bundy's case did not involve a guilty plea. The court of appeals adhered to the reasoning in the trial court and in the Eighth District decisions and held that Bundy could not have committed the AWA address-verification offense, because the offense itself was a nullity pursuant to *Bodyke.* The court of appeals therefore agreed that for his time in prison that was solely attributable to his AWA address-verification conviction, Bundy qualified as a wrongfully imprisoned individual.

{¶ 14} The state sought this court's discretionary review, and we accepted the following proposition of law:

> A wrongful-imprisonment claim may succeed only if the claimant shows, under the actual-innocence requirement, that he did not commit the acts for which he was convicted. That requirement is not met if a claimant's conviction was set aside solely because a predicate criminal statute was invalidated as unconstitutional.

*Bundy v. State,* 138 Ohio St.3d 1492, 2014-Ohio-2021, 8 N.E.3d 963.

## ANALYSIS

{¶ 15} Actions against the state for wrongful imprisonment are governed by R.C. 2743.48, which places the burden on a claimant to prove by a preponderance of the evidence that he or she meets the definition of a "wrongfully imprisoned individual." *Doss v. State,* 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, at paragraph one of the syllabus. To meet that definition, the claimant must satisfy each of the following requirements:

> (1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony or felony.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

R.C. 2743.48(A).

{¶ 16} If a common pleas court determines that a claimant satisfies each of the five requirements of R.C. 2743.48(A) and declares that the claimant is therefore a wrongfully imprisoned individual, the claimant is then entitled to pursue an action in the Court of Claims against the state for compensation for the time spent in prison, for any fines or expenses incurred during legal proceedings, and for any loss of income directly caused by the imprisonment. R.C. 2743.48(E)(2).

{¶ 17} The cause of action created by the legislature in R.C. 2743.48 constitutes a waiver of the immunity from civil liability that is normally retained by the state. *Walden v. State*, 47 Ohio St.3d 47, 53, 547 N.E.2d 962 (1989). The terms of eligibility and the relief provided in R.C. 2743.48 demonstrate that the state's exposure to potential liability for wrongful imprisonment is very broad in some respects and very narrow in others. Exposure is broad in that compensation freely flows to an eligible claimant without regard to any alleged wrongdoing by the state or other parties and without the significant evidentiary burdens normally placed on a criminal defendant suing the state in tort. *Compare Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71, 362 N.E.2d 646 (1977) (requiring a plaintiff claiming that he was jailed unlawfully to prove intent and lack of privilege to establish a claim of false imprisonment). But exposure to liability is

also narrow in that only a very limited class of individuals can meet the five simple but strict requirements of R.C. 2743.48(A).

{¶ 18} The state's appeal focuses solely on the fifth requirement, R.C. 2743.48(A)(5), and solely on the second alternative method of satisfying that requirement through what is commonly called the "actual innocence" standard.[1] *Doss*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, ¶ 12. In order to establish actual innocence, a claimant must prove that "the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person." R.C. 2743.48(A)(5).

{¶ 19} The limits of the actual-innocence standard and other provisions of the wrongful-imprisonment statute have been tested repeatedly since the statute's original enactment in 1986. In our earliest review of the statute, we were called upon to determine whether a judgment of acquittal was sufficient by itself to establish actual innocence. *Walden* at 47. We rejected the notion, explaining that an acquittal merely establishes the state's failure to meet its burden of proving one or more elements of the offense charged beyond a reasonable doubt. It does not necessarily establish that the charged offense was not committed or that the defendant was innocent. *Id.* at 51–52.

{¶ 20} More recently, this court rejected an attempt to extend the actual-innocence standard to include the reversal of a conviction due to a lack of legally sufficient evidence. *Doss.* In the context of a wrongful-imprisonment action, we found no difference between an acquittal by a fact finder and the reversal of a conviction for insufficient evidence: both are based "on a dearth of evidence of guilt," not on a showing of actual innocence. *Id.* at ¶ 20. We concluded that neither of these two outcomes relieves a claimant of the burden of affirmatively proving that he did not commit the charged offense or any lesser included offenses. *Id.*

{¶ 21} *Walden* and *Doss* exemplify the principle that a criminal defendant has the fundamental right to a presumption of innocence, among many other constitutional safeguards, at the trial on the criminal charge. *See Herrera v. Collins,* 506 U.S. 390, 398–399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). But the presumption of innocence does not extend beyond the trial: "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Id.* at 399. And our decisions in *Walden* and *Doss* make it clear that legal innocence does not translate to a presumption of factual innocence for purposes of R.C. 2743.48(A)(5).

---

1. Because Bundy claimed to have satisfied R.C. 2743.48(A)(5) exclusively by a showing of actual innocence, and because the state has not argued against Bundy's alleged satisfaction of R.C. 2743.48(A)(1) through (4), we make no assessment of Bundy's eligibility under the wrongful-imprisonment statute apart from the actual-innocence claim.

{¶ 22} Though Bundy may not have been factually innocent of the act or omission that formed the basis of his criminal charge, he nonetheless claims to have established that "the charged offense * * * was not committed," R.C. 2743.48(A)(5), because his charged offense—a violation of R.C. 2950.06—was predicated upon laws—R.C. 2950.031 and 2950.032—that were found to be unconstitutional. He argues that when a law is invalidated as unconstitutional, it must be treated as though it had never existed, pursuant to *Norton v. Shelby Cty.*, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). Thus, because the predicate statutes did not exist, Bundy asserts he could not have committed any offense based on them.

{¶ 23} As an initial matter, the general offense of failing to verify an address, in violation of R.C. 2950.06, existed and continues to exist as a valid offense. This case does not involve "the kind of conduct that cannot constitutionally be punished in the first instance." *United States v. United States Coin & Currency*, 401 U.S. 715, 723, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Instead, it involves conduct that has been and continues to be a perfectly sound basis for a criminal charge, but that was, for a time, immune from prosecution because the statutes underlying the charge violated the separation-of-powers doctrine. *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, at paragraphs two and three of the syllabus.

{¶ 24} Further, the holding in *Norton* that "[a]n unconstitutional act is * * * as inoperative as though it had never been passed," *Norton* at 442, does not apply to Bundy's case in the way that he desires.

{¶ 25} In *Norton*, a legislative act created a board of county commissioners and empowered the board to subscribe to stock in railroads, issue bonds, and levy taxes for recoupment, all of which were functions within the exclusive authority of the county court at the time. *Id.* at 436. The act was declared unconstitutional by the state's highest court, and the controversy in *Norton* was whether acts already performed by the board should remain binding, with the premise that the commissioners had acted as de facto officers. *Id.* at 435–436. The United States Supreme Court determined that the commissioners had not acted as de facto officers, differentiating between "the unconstitutionality of acts appointing the officer" and "acts creating the office" itself. *Id.* at 448. The illegality of an appointment does not affect the validity of the appointee's acts. *Id.* But when no office legally exists, the officer's acts have no validity. *Id.* at 449. It is in this context that the United States Supreme Court held that when a legislative act creating an office is unconstitutional, the act "is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Id.* at 442.

And accordingly, the acts of the "officers" were not binding, as there was no "office" for them to fill. *Id.* at 441.

{¶ 26} The continued validity of *Norton*'s broadly stated holding is uncertain,[2] but it is clear from the *Norton* decision that its retroactive nullification of the law functioned as a legal fiction and not as a nullification of an operative fact. Specifically, after declaring the acts of the officers to be invalid, *Norton* examined whether any authorized entity had revalidated those acts by ratifying them. *Id.* at 451–452. If Bundy were correct that such acts must be treated as though they never existed, *Norton*'s remaining analysis would not be necessary as there would no longer be any acts to ratify. Moreover, *Norton* concludes by explicitly declining to examine whether the unauthorized acts may be cured or reversed, and the court expressly states that the case before it "is simply a question as to the validity of the bonds" issued by the purported officers. *Id.* at 454. Thus, the analysis in *Norton* is limited to the validity of the unauthorized acts themselves.

{¶ 27} In the context of Bundy's case, the validity of his sex-offender reclassification has already been settled. We declared that the General Assembly's reclassification provisions in the AWA violated the separation-of-powers doctrine and were therefore invalid from their inception. *Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, paragraphs two and three of the syllabus. The potential applicability of *Norton* begins and ends there. The only remaining issue is the nature of the remedy available to Bundy, if any.

{¶ 28} The question whether the courts should devise remedies that are retroactive or merely prospective when a statute is declared to be unconstitutional has long been the subject of debate. But that question is of no import here for two reasons. First, it has already been answered, as the judicial remedy for the constitutional violation was the reinstatement of prior sex-offender classifications under Megan's Law. *Bodyke* at ¶ 66. And the remedy was imposed retroactively, so that prior convictions were vacated and cases with enhanced penalties were remanded for resentencing when they were based on AWA reclassification. *State v. Gingell,* 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192, ¶ 8; *State v. Howard,* 134 Ohio St.3d 467, 2012-Ohio-5738, 983 N.E.2d 341. Second, the additional remedy currently sought by Bundy is not a judicial remedy or one that

---

2. *See Chicot Cty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (expressly limiting *Norton* regarding the practical effects of the constitutional invalidation of a statute); *Lemon v. Kurtzman,* 411 U.S. 192, 198, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) ("we have receded from *Norton* in a host of criminal decisions"). The holding in *Norton* is now considered a symbol of one extreme of the judicial pendulum that has swung back and forth on the concept of retroactivity. *See* Alison L. LaCroix, *Temporal Imperialism,* 158 U.Pa.L.Rev. 1329, 1352 (2010) (describing *Norton* as "a maximalist version of retroactivity" in line with the Blackstonian, "declaratory" model of law).

arises under the Constitution, but is instead a *statutory* remedy, extended solely by legislative grace and controlled by the language of the statute itself.[3]

{¶ 29} With *Norton*'s applicability clarified, we can conclude that regardless of any legal fiction that might result from the constitutional invalidation of an offense, the offense itself is not erased from objective reality. The statute defining Bundy's offense existed as a historical fact, as did Bundy's act or omission that formed the basis of his criminal charge. And regardless of how far-reaching certain remedies for constitutional violations might be, either in time or in scope, the remedy available to Bundy is statutory and therefore is limited to whatever the General Assembly intended to afford. In short, Bundy has no constitutional right to the remedies provided in R.C. 2743.48.

{¶ 30} To determine legislative intent, we look to the plain language of the statute. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18. The pertinent language from the actual-innocence standard of the wrongful-imprisonment statute requires a claimant to establish that "the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person." R.C. 2743.48(A)(5). Nothing in this language indicates an intention to exclude from the term "offense" certain kinds of constitutional violations. Accepting Bundy's position would require us to add a third criterion to the actual-innocence standard: "or the statute defining the offense was declared unenforceable on constitutional grounds." We decline to make such an addition, as it is axiomatic that a court has a duty to give effect to the words chosen by the General Assembly and not to add or delete words to reach a desired effect. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus.

{¶ 31} We similarly declined to embellish the plain and unambiguous language of a different portion of the wrongful-imprisonment statute, R.C. 2743.48(A)(2), which limits relief solely to claimants who "did not plead guilty" to their underlying criminal charges. *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-

---

3. For these same reasons, none of the authorities cited in the dissenting opinion would require a different result than the one we reach today. To the contrary, we declared "what the law is" and rendered the challenged statute inoperative in *Bodyke* and subsequent cases, leaving no discrepancy with *Marbury v. Madison*, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803) (declaring certain federal legislation to be unconstitutional and rendering it inoperative), or *State ex rel. Huston v. Perry Cty. Commrs.*, 5 Ohio St. 497, 506 (1856) (declaring certain state legislation to be unconstitutional and rendering it inoperative). And as a result, Bundy was "entitled to go free," leaving no discrepancy with Justice Ginsburg's concurring opinion in *Bond v. United States*, — U.S. —, 131 S.Ct. 2355, 2367, 180 L.Ed.2d 269 (2011) (Ginsburg, J., concurring) ("If a law is invalid as applied to the criminal defendant's conduct, the defendant is entitled to go free"). None of these cases stand for the notion that a defendant such as Bundy has a due-process right to a finding of actual innocence under R.C. 2743.48(A)(5), and the dissent's reliance on them is therefore misplaced.

2163, 992 N.E.2d 1111. Dunbar maintained that although he had initially pleaded guilty in his criminal case, the subsequent vacation of his plea rendered it a legal nullity and therefore nonexistent for purposes of the statute. *Id.* at ¶ 13. We held that the plain language of R.C. 2743.48(A)(2) provided no exception for guilty pleas that were later vacated. *Id.* at ¶ 19–20.

{¶ 32} Although different statutory provisions are involved in *Dunbar* and the present case, the arguments are strikingly similar: both claimants have attempted to insert ambiguities into the plain language of R.C. 2743.48 through legal doctrines that are wholly separate from the intent of the legislature. Just as the subsequent vacation of a plea does not mean that the defendant "did not plead guilty" to the offense in *Dunbar*, the subsequent invalidation of a statute does not mean that "the charged offense * * * was not committed" by Bundy. Should the General Assembly intend to broaden the criteria to allow for defendants in Bundy's situation to take advantage of R.C. 2743.48, it must do so by enacting new legislation. There is no dispute that despite being put on notice of his new registration obligations as a Tier II sex offender, Bundy failed to verify his current residence address with the sheriff on March 14, 2008, thereby violating R.C. 2950.06. *Bodyke*'s later invalidation of the statutes for reclassifying sex offenders meant that the increased requirements of R.C. 2950.06 could not be constitutionally enforced against Bundy, and his conviction for failing to comply with those requirements was thus reversed. However, the reversal of his conviction on constitutional grounds does not establish that on March 14, 2008, the violation of R.C. 2950.06 "was not committed" by Bundy. He therefore fails to satisfy the innocence standard of the wrongful-imprisonment statute.

## Conclusion

{¶ 33} A claimant seeking a declaration that he is a wrongfully imprisoned individual does not satisfy the actual-innocence standard of R.C. 2743.48(A)(5) by showing that his conviction was reversed solely because the statute describing the offense could not be enforced on constitutional grounds. Bundy therefore does not meet the definition of a wrongfully imprisoned individual and is not entitled to seek compensation from the state. We reverse the judgment of the Second District Court of Appeals and remand the cause to the trial court to enter an order of dismissal.

Judgment reversed
and cause remanded.

O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., concurs in judgment only.

O'NEILL, J., dissents.

O'Neill, J., dissenting.

{¶ 34} Respectfully, I dissent. Rather than reversing the judgment of the court of appeals and ordering the trial court to dismiss this action, I would take this opportunity to adopt a clearly understood rule of law. One who has been convicted of a crime that is found by a court *not to be a crime* has been wrongfully convicted. It is that simple, and justice demands no less.

{¶ 35} "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each." *Marbury v. Madison,* 5 U.S. 137, 177, 1 Cranch 137, 2 L.Ed. 60 (1803). When Chief Justice John Marshall wrote these words for a unanimous United States Supreme Court more than two centuries ago, he declared a core principle of our legal system with roots descending back into the mists of time: Judges may invalidate unconstitutional laws and must resolve cases as if the unconstitutional law were never put into place.

{¶ 36} We have before us today a sufficiently similar case. Bundy has established that the criminal offense he was imprisoned for was predicated on a law that violated the separation of powers. *See State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, paragraph two of the syllabus. The law was therefore a legislative overreach purporting to grant unconstitutional authority to the executive branch in violation of Ohio's Constitution. In *Marbury,* the legislature had purported to expand the original jurisdiction of the United States Supreme Court. *Marbury* at 175–176. The court invalidated a section of the Judiciary Act of 1789 without providing the relief granted by that section, resolving the case as if the section had never been enacted. *Id.* at 177 ("an act of the legislature, repugnant to the constitution, is void").

{¶ 37} If a law is enacted that extends beyond the power of the legislature enacting it, it is bedrock law that the enactment is and was a nullity without the force and effect of law. *State ex rel. Huston v. Perry Cty. Commrs.,* 5 Ohio St. 497, 506 (1856). "In short, a law 'beyond the power of Congress,' for any reason, is 'no law at all.'" *Bond v. United States,* —— U.S. ——, 131 S.Ct. 2355, 2368, 180 L.Ed.2d 269 (2011) (Ginsburg, J., concurring), quoting *Nigro v. United States,* 276 U.S. 332, 341, 48 S.Ct. 388, 72 L.Ed. 600 (1928). It logically follows that one who is convicted of violating a law that has no legal force has been wrongfully convicted. "'An offence created by [an unconstitutional law],' the Court has held, 'is not a crime.' *Ex parte Siebold,* 100 U.S. 371, 376, 25 L.Ed. 717 (1880)." (Brackets sic.) *Bond* at 2367 (Ginsberg, J., concurring). Consequently, if the state imprisons a person based on a wrongful conviction, that person is and always was legally and factually innocent. "'A conviction under [such a law] is

not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment.' * * * If a law is invalid as applied to the criminal defendant's conduct, the defendant is entitled to go free." (Brackets sic.) *Bond* at 2367 (Ginsburg, J., concurring), quoting *Siebold* at 376–377.

{¶ 38} I would affirm the judgment of the Second District Court of Appeals and remand to the trial court for execution of that court's judgment.

{¶ 39} Therefore, I dissent.

_____

Christopher W. Thompson and Anthony Comunale, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Stephen P. Carney and Samuel C. Peterson, Deputy Solicitors, and Debra Gorrell Wehrle, Senior Assistant Attorney General, for appellant.