OPINION
Defendant-appellant, Lonnie Sanders, appeals the decision of the Clermont County Court of Common Pleas finding him to be a habitual sex offender subject to community notification pursuant to R.C. Chapter 2950.
On May 25, 1983, appellant was convicted in Hamilton County, Ohio and sentenced to a two-to-fifteen-year prison term for attempted rape of a child family member. After his release from prison, and while on parole, appellant was indicted on October 23, 1986 for one count of gross sexual imposition against his daughter, a child under thirteen years of age, a specification that he had been previously convicted of a sexually oriented offense. On January 29, 1987, appellant pled no contest to the charge. The trial court found appellant guilty and on January 30, 1987, sentenced him to a two-year prison term to be served consecutive to the prison term for his earlier offense. The earlier prison term was reinstated when appellant's parole was revoked.
In 1997, the Department of Rehabilitation and Correction recommended that appellant be adjudicated a sexual predator. After procedural delays, a sexual predator hearing was held on June 15, 1999, at which it was stipulated that appellant was a habitual sex offender. Appellant argued against imposing community notification because he is old, becoming deaf, and suffers numerous health problems. The trial court ordered that appellant be subject to community notification. Appellant appeals, raising three assignments of error.
Assignment of Error No. 1:
R.C. CHAPTER 2950 VIOLATES THE OHIO CONSTITUTION.
In his first assignment of error, appellant contends that R.C. Chapter 2950, Ohio's "Megan's Law," denies him his inalienable rights under Article I, Section 1, of the Ohio Constitution. However, the Supreme Court of Ohio has found that the registration, verification, and notification provisions of R.C. Chapter 2950 are narrowly tailored to serve the legitimate purpose of the state's police powers, and that the provisions do not unreasonably infringe upon the rights of sexual predators. State v. Williams (2000), ___ Ohio St.3d ___, Ohio LEXIS 813 at *70; State v. Dickens (Aug. 2, 1999), Clermont App. No. CA98-09-075, unreported, at 11, 14. The first assignment of error is overruled.
Assignment of Error No. 2:
 R.C. 2950.09(C)(2)(b)(ii) IS UNCONSTITUTIONAL AND VOID DUE TO VAGUENESS, DEPRIVING APPELLANT OF HIS RIGHT TO DUE PROCESS.
In his second assignment of error, appellant contends that R.C.2950.09(C)(2)(b)(ii) is unconstitutionally vague because it contains no guidelines for determining when habitual sex offenders may be subject to the community notification provisions of R.C. 2950.10 and 2950.11. Although this argument was not raised in the proceedings below, we will consider the issue as it involves significant rights and interests. SeeState v. Rose (Sept. 15, 1997), Clermont App. No. CA96-11-106, unreported, at 3, fn. 1, citing In re M.D. (1988),38 Ohio St.3d 149, syllabus.
The standard for evaluating a void-for-vagueness claim was set forth in Grayned v. Rockford (1972), 408 U.S. 104, 108-109,92 S.Ct. 2294, 2298-2299, and Perez v. Cleveland (1997), 78 Ohio St.3d 376,378:
 Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. * * * [W]hen a statute is challenged under the due process doctrine of vagueness, a court must determine whether the enactment (1) provides sufficient notice of its proscriptions and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement. (Footnotes and citations omitted.)
Perez at 378. Where a statute does not proscribe or prohibit conduct, but is only remedial in nature, it may be challenged on the basis that it allows arbitrary or discriminatory enforcement. See id.
The void-for vagueness doctrine does not require that statutes be drafted with "scientific precision." Every detail of the statute's procedural enforcement need not be set forth. Id. A statute's certainty may be ascertained "by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." Id. at 378-379, citing State v. Dorso (1983),4 Ohio St.3d 60, 61. Courts are often required to analyze statutes beyond their plain language. The courts must "occasionally determine the appropriate standard of proof to apply in statutory actions in the absence of a legislative statement on the issue."Perez, 78 Ohio St.3d at 379, citing State v. Walden (1989),47 Ohio St.3d 47, 53. Once such judicial determinations are made, appellate review and stare decisis prevent arbitrary and discriminatory enforcement. Perez, 78 Ohio St.3d at 379.
R.C. 2950.09(C)(2)(b) provides in part:
 After reviewing all testimony and evidence presented at the sexual predator hearing and the factors specified in division (B)(2) of this section, the court shall determine by clear and convincing evidence whether the offender is a sexual predator. If the court determines that the offender is not a sexual predator, it shall also determine whether the offender previously has been convicted of or pleaded guilty to a sexually oriented offense other than the offense in relation to which the hearing is being conducted.
 Upon making its determinations at the hearing, the court shall proceed as follows:
* * *
 (ii) * * * [I]f the court determines that the offender is not a sexual predator but that the offender previously has been convicted of or pleaded guilty to a sexually oriented offense other than the offense in relation to which the hearing is being conducted, it shall include its determination that the offender is not a sexual predator but is a habitual sexual offender in the offender's institutional record, shall attach the determinations to the offender's sentence, shall specify that the determinations were pursuant to division (C) of this section, shall provide a copy of the determinations to the offender, to the prosecuting attorney, and to the department of rehabilitation and correction, and may impose a requirement that the offender be subject to the community notification provisions regarding the offender's place of residence that are contained in sections 2950.10 and 2950.11 of the Revised Code. The offender shall not be subject to those community notification provisions relative to the sexually oriented offense in question if the court does not so impose the requirement described in this division. If the court imposes those community notification provisions, the offender may appeal the judge's determination that the offender is a habitual sexual offender. (Emphasis added.)
Appellant asserts that this provision is unconstitutionally vague because the portion emphasized above provides no standard guiding the determination to impose community notification. Appellant argues that, as a result, he was prevented from defending against the possibility of community notification.
In evaluating appellant's vagueness claim, we look to the underlying structure of R.C. Chapter 2950. As noted by the Supreme Court of Ohio, R.C. Chapter 2950, as enacted by H.B. 180, established a new classification scheme for sexual offenders, including (1) sexually oriented offender, (2) habitual sex offender, and (3) sexual predator. Cook, 83 Ohio St.3d at 407. A sexually oriented offender is one who has committed a "sexually oriented offense," as the term is defined in R.C. 2950.01(D), but who does not fit into either the habitual sex offender or sexual predator descriptions. Id. A "sexually oriented offender" is subject to registration and verification provisions, R.C.2950.03-.07, but not community notification provisions. R.C.2950.10-.11 "Sexual predator" is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). Community notification is mandatory. R.C. 2950.10-.11.
A habitual sex offender occupies a realm between a sexually oriented offender and a sexual predator. "Habitual sex offender" is defined as "a person who is convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses." R.C. 2950.01(B). A habitual sex offender is unlike a sexually oriented offender because the offender has at least one prior sexually oriented offense conviction and is unlike a sexual predator because the General Assembly has not expressly defined the offender class by likelihood of recidivism. For this reason, the statute leaves to the judgment of the trial court whether community notification is appropriate as to the given offender. R.C. 2950.09(C)(2)(b)(ii).
The General Assembly had substantial reason to vest the courts with the authority to order community notification habitual sex offenders. R.C. 2950.02 sets forth the legislative determinations and intent to protect the public safety through the release of necessary information. When considering claims arising out of R.C. Chapter 2950, these determinations and intent must be heeded. As relevant to the issue in the instant case, R.C. 2950.02(A) states:
 (2) Sexual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment, a prison term, or other confinement and that protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest.
* * *
 (5) A person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.
 (6) The release of information about sexual predators and habitual sex offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems as long as the information released is rationally related to the furtherance of those goals.
With this background, we turn to the merits of appellant's claim that R.C. 2950.09(C)(2)(b)(ii) is void because it is vague and gives the trial court unbridled discretion which results in arbitrary and discriminatory enforcement.
If the explicit terms of the challenged provision are reviewed outside the context of the entire statutory scheme, it arguably could be read to give unlimited power to the trial court when imposing community notification. As previously quoted, once an offender has been determined to be a habitual sex offender, the trial court, pursuant to R.C. 2950.09(C)(2)(b)(ii),
 may impose a requirement that the offender be subject to the community notification provisions regarding the offender's place of residence that are contained in sections 2950.10 and 2950.11 of the Revised Code. (Emphasis added.)
In its isolated text, the provision includes no term limiting the scope of the discretion given by the word "may." This provision, though, cannot be read in isolation. It must be read within the context of how R.C. Chapter 2950 functions.
If an offender is only a sexually oriented offender, having committed only one sexually oriented offense and not posing a likely risk of recidivism, the legislature has determined that community notification is unnecessary. At the other extreme is the sexual predator, who poses the highest risk of recidivism. This offender poses such a danger to the general public that community notification is mandated. However, by definition, a habitual sex offender may not pose as great a risk of recidivism. Compare R.C. 2950.01(B) and (E). Thus, community notification may not be required as to a given habitual sex offender. The General Assembly effectuated this result through R.C. 2950.09(C)(2)(b)(ii), which gives the trial court the utmost discretion in determining whether community notification is required.
This discretion is not unlimited. The intent of the General Assembly in enacting H.B. 180 and as included in R.C. 2950.02(A) sets forth clear limits upon the trial court's power. R.C.2950.02(A)(6) allows for the release of information about the habitual sex offender "as long as the information released is rationally related to the furtherance" of the goals of "public safety and public scrutiny of the criminal and mental health systems." Should the trial court impose community notification where the release of such information is not necessary to protect and inform the public, the trial court's order would exceed the purposes of R.C. Chapter 2950 and be void.
Appellant suggests that the statute is nonetheless unconstitutional because it provides no specific guidelines for the trial court to follow when making its decision. Appellant points to R.C. 2950.09(B)(2), which sets forth factors for the trial court's consideration when determining if an offender is a sexual predator, as an indication that the General Assembly could have easily provided such guidelines for imposing community notification pursuant to R.C. 2950.09(C)(2)(b)(ii).
R.C. 2950.09(B)(2) is not analogous to R.C. 2950.09(C)(2)(b)(ii) because classification and notification are separate issues under R.C. Chapter 2950. R.C. 2950.09(B)(2) is more akin to the determination of whether the offender is classified as a habitual sex offender. The habitual sex offender criteria is repeated throughout R.C. 2950.09(C), namely, whether the offender has at least one prior sexually oriented offense conviction.
The decision of whether to impose community notification upon a habitual sexual offender involves issues significantly different from the decision regarding whether the offender is a sexual predator. R.C. 2950.09(B)(2) sets forth specific factors which the General Assembly has determined weigh heavily in sexual predator adjudications. The decision to impose community notification upon a habitual sex offender does not involve such specific factors. Rather, it involves the weighing of a variety of interests including the offender's circumscribed right of privacy, the public interest in the efficient functioning of the government, the public safety, the public's right of access to and awareness of the criminal and mental health systems, and any risk of recidivism that the offender may pose. These interests are all included in the legislative determinations and intent. See R.C.2950.02(A). Although R.C. 2950.09(C)(2)(b)(ii) may not explicitly set forth in its text specific factors for the trial court to consider when making its judgment, the statutory scheme of R.C. Chapter 2950 provides sufficient, clear guidance to the trial court.
In summary, we find that R.C. 2950.09(C)(2)(b)(ii) is not void for vagueness. The decision whether to impose community notification upon a habitual sex offender pursuant to that provision is left to the discretion of the trial court. In exercising its discretion, the trial court considers the variety of interests included in R.C. 2950.02(A) in light of any risk of recidivism posed by the offender. The statute does not require the trial court to specifically state how it resolved this balancing of interests. Compare R.C. 2929.19 (mandating when the trial court must give its reasons for imposing sentence). Instead, the trial court need only pronounce its judgment, and that judgment must conform to the intent of R.C. Chapter 2950. R.C. 2950.02(A)(6). The second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT LACKED CLEAR AND CONVINCING EVIDENCE TO IMPOSE COMMUNITY NOTIFICATION REQUIREMENTS ACCORDING TO R.C. 2950.09(C)(2)(b)(ii).[1]
In his final assignment of error, appellant contends that the trial court erred by imposing upon him community notification pursuant to R.C. 2950.10 and 2950.11. Appellant asserts that he poses no risk of danger to the public and that community notification is unnecessary.
We may reverse the decision of the trial court only if that court abused its discretion when imposing community notification upon appellant. "Abuse of discretion" connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. An abuse of discretion will be found where the trial court's decision is without a reasonable basis or is not supported by competent, credible evidence. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401.
To restate the standard in terms of the issue before this court, when imposing community notification upon a habitual sex offender, a trial court does not abuse its discretion where there is evidence suggesting that the offender poses a danger to the public and that the public must be made aware of this danger. Clearly, if the offender is found to pose no risk of recidivism, there is little rational relationship between any release of information and furthering the public safety and awareness. So long as there is some competent, credible evidence in support of the trial court's decision that, in the given case, the release of information will further the stated goals of the General Assembly, this court may not reverse the decision of the trial court.
We address at the outset an argument of appellant which fails to properly consider the clear functioning of R.C. Chapter 2950. Appellant asserts in his brief that because the trial court found that he was not a sexual predator, the trial court found that "he is not likely to commit a future sexually oriented offense" and that he "is not a threat to the public safety." (Emphasis sic.) Contrary to appellant's contention, the General Assembly expressly found that both sexual predators and habitual sex offenders "pose a high risk in engaging in further offenses" and that "protection of members of the public" from these offenders is a "paramount governmental interest." R.C. 2950.02(A)(2).
The difference between a sexual predator and an habitual sex offender is only that, as to the sexual predator, the state proves by clear and convincing evidence that the offender "is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). In the case of a habitual sex offender, the state is unable to prove this fact by clear and convincing evidence. Still, the offender has already demonstrated a propensity for such conduct by having been convicted of a sexually oriented offense on at least one occasion prior to the current sexually oriented offense. The distinction between the two classifications is not whether there is any risk of recidivism, but instead, it is the demonstrated likelihood of recidivism posed by the offender.
In the instant case, the trial court was presented evidence that appellant posed a danger to the public. He was previously convicted of the attempted rape of a family member, a child under thirteen years of age. Within months of his release from prison, he committed gross sexual imposition against his daughter. By appellant's own admission at the sexual predator hearing, it was the circumstances, not his own volition, which prevented his conduct from progressing further. Even at the hearing, appellant claimed that his daughter initiated the conduct. Although appellant's infirmities may render him less capable of committing future offenses, there is competent credible evidence that he poses a sufficient danger to the public to warrant community notification.
We find that the trial court did not abuse its discretion by imposing community notification upon appellant as a habitual sex offender. The third assignment of error is overruled.
Judgment affirmed.
 ____________________________ Presiding Judge VALEN, J.
POWELL, P.J., and YOUNG, J., concur.
[1] As indicated in the previous assignment of error, "clear and convincing evidence" is not the proper standard for imposing community notification. In fact, a "clear and convincing evidence" standard would seem to contradict the clear intent of the General Assembly to give to the trial court the maximum amount of discretion needed to make its decision.