DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted the motion of defendant-appellee, the state of Ohio, for summary judgment in an action for wrongful imprisonment. Plaintiff-appellant, Danny Brown, now challenges that judgment through a single assignment of error:
 {¶ 2} "The trial court committed error when it granted the state of Ohio's motion for summary judgment because there are material questions of fact at issue and the state is not entitled to judgment as a matter of law."
 {¶ 3} The underlying facts of this case were set forth in our decision and judgment entry of September 16, 1983, in the case ofState v. Brown (Sept. 16, 1983), 6th Dist. No. L-82-297. We repeat them here. On the evening of December 5, 1981, Barbara ("Bobbie") Russell was assaulted, raped and brutally murdered in her home in Toledo, Ohio. Appellant was subsequently convicted of the aggravated murder of Bobbie in the commission of an aggravated burglary and sentenced to life in prison for that offense.
 {¶ 4} At appellant's trial on the aggravated murder charge, Dr. Renate Fazekas, a forensic pathologist and deputy coroner with the Lucas County Coroner's Office, testified that the victim was killed by means of an extension cord wrapped around her neck. A long black club was used, in tourniquet-fashion, to tighten the cord, causing immediate strangulation. Dr. Fazekas also testified that the victim had been struck twice in the head, with either blow capable of causing unconsciousness. The victim's head injuries were probably caused by a "blunt force" instrument, such as a club or table leg. The victim was also sodomized. Having accomplished this, the perpetrator, according to Dr. Fazekas, then severely lacerated and bruised the victim's vaginal cavity through the insertion of a broom handle with "very considerable force." Dr. Fazekas stated that the suspected time of death, sometime between 9:00 p.m. and 10:00 p.m., was consistent with her autopsy and medical findings.
 {¶ 5} The only witness to the offense, besides the perpetrator or perpetrators, was Bobbie's then six-year-old son Jeffrey. On the night of the crime, Jeffrey had gone upstairs to bed at approximately 9:00 p.m. Sometime thereafter, a noise from the area near the apartment's back door attracted his attention. Jeffrey testified at the aggravated murder trial that upon hearing the noise, he went to the window and saw a man, whom he later identified as "Danny," at the back door of the apartment. When the man went around to the front door of the apartment, Jeffrey went to his mother's bedroom which faced the front of the apartment complex. He looked out the window and saw the same man open the front door of the apartment with a key. Jeffrey proceeded down the stairway, and partially observed an altercation take place between his mother and the man he identified as "Danny." He testified that he saw the man swinging a stick at his mother while she held a knife. He also testified that he saw this man take the knife away from his mother. In addition to this testimony, Jeffrey also stated, although inconsistently, that he saw a second man in his living room. Jeffrey then ran back upstairs and hid under his twin sisters' bed. Jeffrey testified that "Danny" then entered the room, knocked his snowsuit off of a clothes hanger, and then wrapped the hanger around the neck of his two and one-half year old sister Sandy. "Danny" then went through the other rooms of the apartment before leaving. Apparently, Jeffrey fell asleep. The next morning, December 6, upon waking, Jeffrey went to the apartment of a neighbor, Joyce Awls.
 {¶ 6} Awls testified that Jeffrey stated, "Danny killed my mama." Another witness, Virgie Lee Moton, also testified to this statement. Carl Tinsley, a friend of Awls, was in her apartment when Jeffrey arrived. He immediately went to Jeffrey's apartment and found Bobbie Russell dead. After bringing Jeffrey's sisters back to Awls apartment, Tinsley called the police.
 {¶ 7} One of the police officers, William Gunkel, testified that he questioned Jeffrey's sister Sandy, who had been assaulted with the clothes hanger. The officer testified that Sandy said someone named "Darnell," "Donnell" or "Daniel" had placed the hanger around her neck and had struck her in the face. She also told the officer that the man was a bus driver and drove a TARTA bus or a "Black White" cab. Appellant did not have a car and had previously taken the bus to Bobbie's home.
 {¶ 8} Detective Arthur Marx, who was in charge of the investigation, was given a description of the perpetrator by Jeffrey. Subsequently, Detective Marx obtained a photograph of appellant and placed it in an array containing seven other photographs of black males who were approximately the same age and who had similar facial features. Jeffrey immediately identified Brown as the killer. Based upon this information, and certain additional information, an arrest warrant was issued.
 {¶ 9} Upon learning that he was being sought by the police, appellant voluntarily came to the police station, where he was Mirandized. Appellant waived his right to an attorney and was thereafter questioned at length. Appellant contended that he had an alibi for the evening of December 5. Several persons whom appellant claimed were with him on December 5, also spoke with Detective Marx. Appellant then agreed to participate in a "one-on-one show-up," which Detective Marx arranged. Jeffrey was brought into a room in which appellant and two other black males were seated. Jeffrey again identified appellant as the killer.
 {¶ 10} At the trial, appellant called numerous witnesses and testified in his own behalf, essentially adhering to his prior alibi claim. On September 24, 1982, the jury returned a verdict finding appellant guilty of aggravated murder. Appellant was subsequently sentenced to life in prison.
 {¶ 11} In 2000, DNA testing revealed that appellant was not the source of semen found in Bobbie Russell. Further testing revealed that the semen came from a man named Sherman Preston, who, in 2000, had been convicted of an aggravated murder that occurred in 1983. Based on this newly discovered evidence, appellant filed a motion for a new trial. On April 9, 2001, the motion was granted. Subsequently, the Lucas County Common Pleas Court entered a nolle prosequi at the request of the state and appellant was released from prison. To date, no one has been charged with the aggravated murder of Bobbie Russell.
 {¶ 12} On September 27, 2002, appellant filed a complaint in the court below seeking a determination that he was a wrongfully imprisoned individual entitled to compensation under R.C.2743.48. The state responded by filing a motion for summary judgment. The state supported its motion with selected portions of the transcript from the original aggravated murder trial and the affidavit of Dean Mandross, an Assistant Lucas County Prosecutor. In his affidavit, Mandross stated that appellant is a suspect in the death of Bobbie Russell and that the Lucas County Prosecutor's Office is contemplating prosecuting appellant for the murder of and/or for acts associated with the murder of Bobbie Russell. Based on this affidavit and the evidence presented at the original aggravated murder trial, the state asserted that reasonable minds could only conclude that appellant is not a wrongfully imprisoned individual under R.C. 2743.48(A) and that the state is entitled to judgment as a matter of law.
 {¶ 13} In response, appellant filed a memorandum in opposition supported by the deposition testimony of Detective Thomas Ross, an investigator assigned to the Cold Case Unit of the Lucas County Prosecutor's Office, and a photocopy of an article from the Toledo Journal. Appellant argued that the DNA test results were compelling evidence of his innocence and that the state should not be permitted to defeat his claim based on the metaphysical possibility that someday it may choose to prosecute him. Rather, appellant asserted that the case should proceed to a trial on the merits to allow him to prove his innocence by a preponderance of the evidence. Then, appellant argued, the state would be collaterally estopped from bringing criminal charges against him in the future.
 {¶ 14} On January 7, 2005, the lower court issued an opinion and judgment entry granting the state's motion for summary judgment and dismissing appellant's claim for wrongful imprisonment. The court determined that the state had provided sworn testimony that appellant was the man who murdered Bobbie Russell and that appellant had not countered this evidence with evidence of his own that he was innocent of the crime. In particular, the court noted that appellant had not filed an affidavit stating that he was innocent of the murder or directed the court to any testimony proving that he was innocent. The court then stated: "Therefore, the Court finds that Mr. Brown has not proven by the greater weight of the evidence that he is innocent of the aggravated murder of Barbara Russell." Appellant now appeals that judgment.
 {¶ 15} In his sole assignment of error, appellant contends that the trial court erred in granting the state summary judgment where genuine issues of material fact remain. Specifically, appellant asserts that the DNA test results provide compelling evidence of his innocence and, accordingly, the court erred in concluding that he had failed to counter the state's evidence with evidence of his own that he was innocent of the crime.
 {¶ 16} Initially, we note that despite the trial court's terminology quoted above ("Mr. Brown has not proven by the greater weight of the evidence that he is innocent"), it is clear from its decision that the lower court did apply the appropriate summary judgment standard and did not weigh the evidence. Regardless, appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs.
(1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 17} In 1986, the Ohio General Assembly enacted R.C.2305.02 and 2743.48 which, together, created a cause of action in Ohio for wrongful imprisonment. In State ex rel. Tubbs Jones v.Suster (1998), 84 Ohio St.3d 70, 72, the Supreme Court of Ohio summarized the process created by these statutes as follows:
 {¶ 18} "The Ohio Revised Code provides a two-step process whereby a person claiming wrongful imprisonment may sue the state of Ohio for damages incurred due to the alleged wrongful imprisonment. Walden v. State (1989), 47 Ohio St.3d 47, 49
* * *. The first action, in the common pleas court under R.C.2305.02, seeks a preliminary factual determination of wrongful imprisonment; the second action, in the Court of Claims under R.C. 2743.48, provides for damages.
 {¶ 19} "Prior to filing suit in the Court of Claims for damages, a petitioner must establish the following: (1) that petitioner was convicted of a felony; (2) the petitioner was sentenced for that conviction; (3) the conviction was vacated, dismissed, or reversed; (4) no further prosecution was attempted or allowed for that conviction or any act associated with that conviction; and (5) the offense of which the petitioner was found guilty was not committed by the petitioner or was not committed at all. R.C. 2305.02, R.C. 2743.48(A). However, a previous finding of not guilty is not sufficient to establishinnocence. The petitioner seeking to establish a claim for wrongful imprisonment must produce more evidence than a judgment of acquittal, which is merely a judicial finding that the state did not prove its case beyond a reasonable doubt. Ellis v.State (1992), 64 Ohio St.3d 391, 393 * * *. The petitioner carries the burden of proof in affirmatively establishing his or her innocence under R.C. 2743.48(A)(5).
 {¶ 20} "If the common pleas court makes such a finding, then the petitioner may file a civil suit for money damages against the state. R.C. 2743.48(B) and (D). The claim must be commenced in the Court of Claims within two years of the common pleas court's determination that the petitioner had been wrongfully incarcerated. R.C. 2743.48(H)."
 {¶ 21} Moreover, we note that the purpose of the wrongful imprisonment statutes is to compensate individuals who are truly innocent of the crimes of which they have been convicted.Chandler v. State (1994), 95 Ohio App.3d 142, 147-148. We do not believe that they were intended to be used as a means to prevent future prosecution should additional evidence of the crime be discovered.
 {¶ 22} It is undisputed that appellant meets the first three requirements for a determination of wrongful imprisonment. He was convicted of a felony, was sentenced for that conviction, and the conviction was vacated upon the filing of a motion for a new trial. The issues of contention, however, are whether any further criminal proceeding can be brought or will be brought against appellant for any act associated with the original conviction and whether appellant is actually innocent of the crime of which he was convicted. On these elements, the state presented evidence in the proceeding below that there was an ongoing investigation into the aggravated murder of Bobbie Russell and that appellant continued to be a suspect. The state also submitted a portion of the transcript from the original aggravated murder trial in which Jeffrey testified that appellant killed his mother. In addition to Jeffrey's testimony, neighbors testified that when Jeffrey first came to them he kept repeating "Danny killed by mama." Jeffrey knew Danny as a man who had been to his home several times and had spent the night with his mother. When asked if the assailant may have been another man who his mother had dated, Jeffrey was insistent that the perpetrator was appellant. Also in the record is the deposition of Thomas Ross, the detective who, at the time of the proceedings below, was continuing to investigate the murder. Ross testified that in the course of his investigation he spoke with Jeffrey who is now an adult. Ross testified that there is no doubt in Jeffrey's mind that appellant killed his mother. Ross also stated that Jeffrey still recalled seeing a second man in the doorway of the home and told Ross that the second man walked through the house.
 {¶ 23} Appellant asserts that the DNA evidence is compelling evidence of his innocence and raises a genuine issue of material fact on that issue. The DNA evidence, however, only establishes that appellant did not rape Bobbie Russell. Moreover, it is noteworthy that appellant was never convicted of raping Russell. Rather, he was convicted of aggravated murder in the commission of an aggravated burglary.
 {¶ 24} The Supreme Court of Ohio has stated that in enacting the wrongful imprisonment statutes, "the General Assembly intended that the court of common pleas actively separate those who were wrongfully imprisoned from those who have merely avoided criminal liability." Walden v. State (1989), 47 Ohio St.3d 47,52. Accordingly, the statutes demand that "[c]laimants seeking compensation for wrongful imprisonment must prove that at the time of the incident for which they were initially charged, they were not engaging in any other criminal conduct arising out of the incident for which they were initially charged." Gover v.State (1993), 67 Ohio St.3d 93, syllabus. In the summary judgment proceeding below, the state presented direct and circumstantial evidence, by means of the partial trial transcript, that appellant murdered Bobbie Russell. In addition, Detective Ross testified that the investigation is ongoing and that appellant remains a suspect. Upon the presentation of this evidence, the burden shifted to appellant to respond "by affidavit or as otherwise provided" in Civ.R. 56, and thereby "set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). The "as otherwise provided" language refers to the forms of evidence listed under Civ.R. 56(C): "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact[.]" This rule clearly contemplates that a summary judgment motion or response must be supported by some form of sworn statement or stipulations. Appellant did not respond to the state's summary judgment motion "by affidavit or as otherwise provided" on the issue of his innocence with regard to the offense of aggravated murder and therefore failed to raise a genuine issue of material fact on that element of his claim of wrongful imprisonment.
 {¶ 25} Accordingly, the trial court did not err in granting the state's motion for summary judgment and the sole assignment of error is not well-taken.
 {¶ 26} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Parish, J. concur.
Skow, J., dissents.