Sʜʀᴀᴅᴇʀ, Aᴘᴘᴇʟʟᴇᴇ, *v.* EQᴜɪᴛᴀʙʟᴇ Lɪꜰᴇ Aꜱꜱᴜʀᴀɴᴄᴇ Sᴏᴄɪᴇᴛʏ ᴏꜰ ᴛʜᴇ Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ; Wᴏʟꜰᴏʀᴅ ᴇᴛ ᴀʟ., Tʀᴜꜱᴛᴇᴇꜱ, Aᴘᴘᴇʟʟᴀɴᴛꜱ.

[Cite as Shrader *v.* Equitable Life Assur. Soc. (1985), 20 Ohio St. 3d 41.]

(No. 85-184—Decided November 27, 1985.)

*Albers & Albers* and *James S. Albers,* for appellee.

*Vorys, Sater, Seymour & Pease, John C. Elam, James E. Phillips* and *F. James Foley,* for appellants.

DOUGLAS, J.

I

The first issue in this case is whether R.C. 2105.19, dealing with persons prohibited from benefiting from the death of another, is applicable in this case. That provision states:

"(A)  No person who is *convicted* of or *pleads guilty* to a violation of or complicity in the violation of section 2903.01 [aggravated murder], 2903.02 [murder], or 2903.03 [voluntary manslaughter] of the Revised Code * * *

shall in any way benefit by the death. All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if *the guilty person* had predeceased the decedent * * *." (Emphasis added.)

It is undisputed that John Shrader has never been convicted of, or pled guilty to, any of the homicides enumerated in the above provision. Indeed, he has never been charged with any criminal homicide offense. Since Shrader is presumed innocent of any criminal violation until his guilt is established by proof beyond any reasonable doubt, see *Taylor* v. *Kentucky* (1978), 436 U.S. 478, 483, he cannot be said to be a "guilty person." Since R.C. 2105.19 only operates to prevent certain *criminals* from reaping the fruits of their crimes, and since John Shrader does not fall into that category of persons, the statute is not applicable in this case.

Shrader argues that R.C. 2105.19 provides the exclusive method for disqualifying a beneficiary from receiving life insurance proceeds. A familiar principle of statutory construction, however, is that a statute should not be construed to impair pre-existing law in the absence of an explicit legislative statement to the contrary. *Isbrandtsen Co.* v. *Johnson* (1952), 343 U.S. 779, 783; *Frantz* v. *Maher* (1957), 106 Ohio App. 465, 471-472 [7 O.O.2d 209]. All that R.C. 2105.19(A) does or purports to do is to eliminate the necessity to prove that the beneficiary of a policy of life insurance committed such an act, when the beneficiary has been convicted of or has pled guilty to one of the specifically enumerated homicide offenses. There is no indication that the General Assembly or any case law intended or requires that the statute be construed to be the *exclusive* method to determine whether a person should be barred from recovering as a beneficiary under a policy of insurance on the life of a decedent alleged to have been killed by the beneficiary. Thus we find Shrader's argument regarding the statute unpersuasive.

## II

The second issue in this case is whether the common law will bar a beneficiary of a life insurance policy from receiving the proceeds of that policy when the beneficiary intentionally and feloniously caused the death of the insured.

The well-established policy of the common law is that no one should be allowed to profit from his own wrongful conduct. The maxim *nullus commodum capere potest de injuria sua propria* has long been applied by courts of law and equity. Wade, Acquisition of Property by Willfully Killing Another — A Statutory Solution (1936), 49 Harv. L. Rev. 715. *Schmidt* v. *Northern Life Assn.* (1900), 112 Iowa 41, 83 N.W. 800, is one of the earliest cases to endorse this policy as a basis for denying insurance proceeds to a beneficiary who had taken the insured's life. The *Schmidt* court reasoned at 44 that "* * * [i]t would be a reproach to our system of

jurisprudence if one could recover insurance money payable on the death of the insured, whose life he had feloniously taken. * * *"

Ten years after the Iowa Supreme Court decided *Schmidt,* this court announced its decision in *Filmore* v. *Metropolitan Life Ins. Co.* (1910), 82 Ohio St. 208. That case held in paragraph one of the syllabus that a beneficiary of a life insurance policy cannot recover thereon where the death of the insured is caused by the intentional and felonious act of the beneficiary. The *Filmore* decision was followed in a unanimous decision of the Court of Appeals for Cuyahoga County in *Huff* v. *Union Fidelity Life Ins. Co.* (1984), 14 Ohio App. 3d 135. In addition, we find that the same rule applies in most jurisdictions. Annotation (1969), 27 A.L.R. 3d 794. Clearly then the common law bars a beneficiary of a life insurance policy from receiving the proceeds of that policy when the beneficiary intentionally and feloniously caused the death of the insured.

### III

The third issue in this case is whether the identity of one who intentionally and feloniously causes the death of another can be established in a civil proceeding thereby preventing the wrongdoer from receiving the proceeds of the deceased's life insurance policy.

In *Smith* v. *Todd* (1930), 155 S.C. 323, 152 S.E. 506, a husband shot and killed his wife and then killed himself. The wife's life insurance policy named the husband as the beneficiary. The germane South Carolina statute provided that "no person who shall be *convicted* in any Court of competent jurisdiction of unlawfully killing another person shall receive any benefit from the death of the person unlawfully killed * * * by way of * * * insurance * * *." (Emphasis added.) The South Carolina Supreme Court ruled that even though the husband had not been convicted of any crime, his estate was not automatically entitled to the insurance proceeds.

In pertinent part, the court at 337-338 stated, "[t]hat, prior to the enactment of this statute, the conviction of a person in the criminal Courts of unlawfully killing another did not establish and fix his status in that regard with respect to the vesting, enforcement, and transmission of civil rights derived from and based upon the death of the person killed by him * * *.

"'* * * His civil status with respect to property rights predicated upon the death of the person unlawfully killed by him remained unaffected by the judgment of his conviction in the criminal Courts, *and for the purpose of asserting and enforcing such rights* he, or any one claiming under him, was at liberty to have the issue, as to whether he had wrongfully or feloniously caused the death of the other person, *tried and adjudicated in a civil action* in a different tribunal governed by different rules of evidence, practice and procedure. * * *'" (Emphasis added.)

*Huff* v. *Union Fidelity Life Ins. Co., supra,* is a similar case. The litigants there were decedent's widow and decedent's son (who was not

the son of the widow). The widow alleged that the son was barred from recovering his father's life insurance benefits because he intentionally and feloniously caused his father's death. The son was never convicted of a homicide, nor did he plead guilty to any homicide offense. In a deposition in the *civil suit,* the son admitted he stabbed his father and thereby caused his death. However, the court described his conduct as that which could be justifiable. Even though the identity of the wrongdoer was known, the appellate court, nevertheless, found in essence that the identity of the father's killer could be established in a civil suit, and held that the question of whether the killing was intentional and felonious was one for the civil trier of fact.

The Uniform Probate Code, which is endorsed by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, is instructive by way of analogy. UPC 2-803(a) prohibits an heir from receiving property under a will if he "feloniously and intentionally kills the decedent * * *." UPC 2-803(e) states:

"A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing *the [Probate] Court may determine by a preponderance of evidence whether the killing was felonious and intentional* for purposes of this section." (Emphasis added.)

The official comment to this section sheds light on the rationale behind the rule:

"* * * At first, it may appear that the matter dealt with is criminal in nature and not a proper matter for probate courts. However, the concept that a wrongdoer may not profit by his own wrong is a civil concept, and the probate court is the proper forum to determine the effect of killing on succession to property of the decedent. There are numerous situations where the same conduct gives rise to both criminal and civil consequences. A killing may result in criminal prosecution for murder and civil litigation by the murdered person's family under wrongful death statutes. Although under this section a conviction in the criminal prosecution is treated as conclusive on the matter of succession to the murdered person's property, acquittal does not have the same consequences. This is because different considerations as well as a different burden of proof enter into the finding of guilty in the criminal prosecution. Hence, it is possible that the defendant on a murder charge may be found not guilty and acquitted, *but if the same person claims as an heir or devisee of the decedent, he may be found in the probate court to have feloniously and intentionally killed the decedent and thus be barred under this section from sharing in the estate.* An analogy exists in the tax field, where a taxpayer may be acquitted of tax fraud in a criminal prosecution but found to have committed the fraud in a civil proceeding. In many of the cases arising under this section there may be no criminal prosecution because the murderer has committed suicide." (Emphasis added.)

Other examples would include those who might be indicted for a crime but not convicted because the speedy trial provisions of R.C. 2945.71 had not been complied with and those suspected of unlawfully burning a building but not indicted or convicted of the crime of arson. Is it reasonable to say that because there has been no criminal conviction in such cases that those seeking to prove the identity of an alleged wrongdoer are precluded in a civil proceeding from doing so because there has been no criminal *conviction*? We think such a proposition is neither reasonable nor proper.

As noted above, the concept that no one should be allowed to profit from his own wrongful conduct is a *civil* concept, and the civil courts are, therefore, a proper forum to determine the identity of one who has been alleged to have caused, intentionally and feloniously, the death of another and if that person is the beneficiary of the proceeds of insurance held on the life of a decedent, then to deprive such person of the proceeds and thereby prevent ill-begotten gain.

## IV

The appellate court in this case took the position that:

"Public policy supports the proposition that the identity of a murderer be proved beyond a reasonable doubt in available criminal proceedings rather than by a lesser degree of proof in a civil proceeding. John J. Shrader should be charged with murder in a criminal court if there is sufficient evidence to civilly prove that he committed murder, at least if his alleged guilt is to disqualify him from recovering the insurance proceeds to which he was otherwise entitled as the primary beneficiary."

It is respectfully submitted that the problem with the appellate court's decision is that it fails to recognize that the instant case is *not* a murder trial, and that John Shrader faces absolutely no loss of his life or liberty as a result of this lawsuit. This is a civil case where the issue has been raised whether John Shrader is *liable* (not whether he is *guilty,* but whether he is *civilly liable*) for the intentional and felonious killing (not murder) of his wife. Shrader brought this action to recover the proceeds of insurance on the life of his wife, and a counterclaim was filed. Upon the evidence before the court, the trier of fact determined that John Shrader failed to defend against the counterclaim of appellants which alleged that Shrader "intentionally and feloniously" caused the death of his wife. This case then is like any other civil case. The trial court applied the law to the facts, granted judgment for the Wolfords, on their counterclaim, and determined that Shrader was not entitled to the insurance proceeds both because he had failed to prove his claim and because he had unlawfully terminated the life of his wife. While Jean Shrader is not a party to this lawsuit, her specific fundamental interests and those of the public in general are involved. It would be manifestly against those interests to allow one who has intentionally and feloniously killed Jean Shrader, or anyone else, to profit thereby.

For all of the foregoing reasons, we, therefore, hold that the identity of a person who intentionally and feloniously caused the death of another can be established in a civil proceeding in order to prevent the wrongdoer from receiving the proceeds of the deceased's life insurance policy. To hold otherwise would be to deprive aggrieved parties of a remedy and the law will always give a remedy. *Lex semper dabit remedium.*

The judgment of the court of appeals is hereby reversed and the final judgment of the court of common pleas is hereby reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, C. BROWN and WRIGHT, JJ., concur.

CELEBREZZE, C.J. and HOLMES, J., separately concur.

CELEBREZZE, C.J. I concur with the majority's reversal of the judgment of the court of appeals and also find merit in the essence of Justice Holmes' thoughtful opinion. However, I deem it appropriate to add some remarks regarding the appellate court's determination that identity of a killer must be conclusively established as a predicate to maintaining a civil disqualification proceeding.

The appellate court's distinction of one element of an intentional killing, *i.e.,* identification, as not being ascertainable in a civil proceeding, from all other disputed elements (sanity, intent, etc.) which are determinable, is without case support and is error. In so holding, the appellate court blurred the difference between *punishment,* which is solely a criminal matter, and *disqualification* from receiving insurance proceeds, which is a proper subject for civil suit. See Parts III and IV of the majority opinion.

Both the appellate court and appellee distinguish the case *sub judice* from all past precedent concerning the element of identity. The appellate court observed that "neither in Ohio nor elsewhere do we find any indication that the common law permitted a secondary beneficiary of an insurance contract to disqualify the primary beneficiary by proving civilly the disputed fact that the primary beneficiary committed the homicide."

In this regard, the recent decision of the Supreme Court of Kansas in *Harper* v. *Prudential Ins. Co.* (1983), 233 Kan. 358, 662 P. 2d 1264, embraced this very issue and is of guidance. The fact pattern underlying this well-reasoned opinion is very similar to the instant case. In *Harper,* the primary beneficiary of a life insurance policy was the husband of the insured. The insured wife had been shot and killed in their home. There was no evidence of a struggle or robbery and her husband was the prime suspect in the killing. Later, the husband, who claimed no involvement in the killing and who had not been convicted, charged, or even arrested, filed a claim for the life insurance benefits. The insurance company in-

vestigator also concluded, as did the sheriff, that the beneficiary husband had most likely killed his insured wife. Regardless of this suspicion, the company paid the insurance proceeds to the husband believing it was bound to do so under a Kansas conviction statute which, like Ohio's, automatically disqualified convicted killers.[1]

The secondary beneficiary filed suit against the insurance company claiming it had improperly paid an unconvicted murderer.

On appeal, the Supreme Court of Kansas agreed with the secondary beneficiary's contention that such a disqualification action could be maintained. The court held that a person who is designated as the primary beneficiary in a policy of life insurance will be barred from recovering under the insurance policy if it is established in an interpleader action that he feloniously killed the insured, regardless of whether he is actually convicted of the killing.

The Kansas court reasoned that the rule prohibiting a murderer-beneficiary from receiving the proceeds of a life insurance policy is predicated upon the common-law maxim that no one will be permitted to profit by his own fraud, take advantage of his own wrong, found any claim upon his own iniquity, or acquire property by his own crime. As regards Kansas' conviction statute, the court held that "[t]he statute does not preclude judicial application of the common-law rule in cases where the beneficiary killed the insured but has not been convicted of the crime." *Id.* at 367.

The *Harper* court concluded that the insurance company should have refused payment pending closure of the police investigation. The court went on to find that the insurer could have filed an interpleader action to afford the secondary beneficiary an opportunity to protect his interests and to shield the insurer from a double liability. The latter course of action is exactly that followed by Equitable herein and is appropriate to determine the alleged disqualification and identity of the husband as the killer.[2]

Accordingly, I agree with the majority that when the beneficiary has been convicted of a designated homicide offense, R.C. 2105.19 merely eliminates the need to prove in a civil action that the beneficiary committed a felonious and intentional killing of the insured. When the civil disqualification statute does not apply, as in this case, Ohio's common law is triggered. In that event, a person challenging the beneficiary's claim has

---

[1] K.S.A. 59-513 (1970) provides:

"No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will * * * or otherwise from such other person any portion of the estate in which the decedent had an interest * * *."

[2] In *Harper, supra,* the husband was eventually charged with and convicted of his wife's murder. However, this fact was not controlling as the Kansas Supreme Court considered the insurance company's payment as improper at a point in time when the husband, like appellee, was still a suspect.

the burden of proving the beneficiary's *identity and responsibility* for the intentional killing, by a preponderance of the evidence. See, also, *Huff* v. *Union Fidelity Life Ins. Co.* (1984), 14 Ohio App. 3d 135, 137.

SWEENEY and C. BROWN, JJ., concur in the foregoing opinion.

HOLMES, J., concurring. Although the determination of this case has presented complex and difficult problems for me, I have concluded that I am able to concur with the majority based upon the following points alluded to by Justice Douglas in his opinion. First, the opinion correctly rejects Shrader's argument that R.C. 2105.19 provides the exclusive method for disqualifying a beneficiary from receiving life insurance. Such section as enacted specifically sets forth that a person who is found guilty of, or pleads guilty to, the enumerated criminal violations is unable to benefit from the death of the insured. The statute provides a conclusive or non-rebuttable defense to any claim for recovery of insurance proceeds by such an individual. As pointed out by Justice Douglas, since Shrader does not fall within the persons specified by the statute, it is inapplicable to this case.

Secondly, I found it necessary to remind myself that this was, and is, a civil proceeding to recover money on an insurance policy — this is not a criminal proceeding. The issue tried below was a civil issue as posed within the counterclaim of the Wolfords: whether the claimant is a wrongdoer attempting to profit from his own wrongdoing? Although the allegations of the counterclaim have criminal connotations, the only real issue before the trial court was whether Shrader, coming into court seeking insurance proceeds, did so with the equities in his favor. This issue being civil, not criminal, may be decided by a preponderance of the evidence, and not do violence to Shrader's civil liberties.

It is true that prior cases in Ohio, such as *Filmore* v. *Metropolitan Life Ins. Co.* (1910), 82 Ohio St. 208, did not involve fact patterns where the specific identity of the perpetrator of the act was unknown. However, I must conclude, as a matter of public policy, that in this type of civil proceeding, the question of identity should not be treated differently than the issue of the state of mind of the identified perpetrator. The existence of R.C. 2105.19 should not appreciably alter this conclusion.

The case was before the trial court upon remand from the court of appeals. It appears that the trial court reasonably followed the mandate of the appellate court and, pursuant to Civ. R. 41(B)(1) and 55(A), rendered judgment for Shrader's failure to comply with the court's order to testify further concerning his relationship with the prior witness, Kinser. The trial court seems to have acted properly upon the Wolfords' motion to dismiss, in holding that a judgment in the manner of a default should be

entered against Shrader for failing to properly pursue his own civil claim and to defend the adverse party's counterclaim.

Accordingly, I join the majority of the court in the reversal of the court of appeals.

WRIGHT, J., concurs in the foregoing opinion.