DECISION
{¶ 1} Relator, Consolidation Coal Company, seeks a writ of mandamus denying permanent total disability ("PTD") compensation to respondent Maiso Alexander ("claimant"), and directing respondent Industrial Commission of Ohio ("commission") to vacate its award of statutory PTD compensation to claimant. Alternatively, relator seeks an order remanding the matter to the commission for further proceedings regarding claimant's PTD application.
 {¶ 2} Pursuant to Loc.R. 12(M) of the Tenth District Court of Appeals, this court appointed a magistrate without limitation of powers specified in former Civ.R. 53(C)[1] to consider relator's cause of action. The magistrate examined the evidence and issued a decision, wherein he made findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate recommended denial of relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision. See, generally, Civ.R. 53(D)(3)(b).
 {¶ 3} After filing objections to the magistrate's decision, relator later moved for leave to file a supplemental memorandum. By journal entry, this court granted relator's motion and provided respondents with an opportunity to file responsive memoranda.
 {¶ 4} Claimant also has submitted a formal request to this court. On the same day that the magistrate rendered his decision, claimant moved for leave to supplement the parties' stipulated evidence. Relator and the commission have not opposed this motion. By journal entry, this court informed the parties that it would consider claimant's motion at the same time that it would consider relator's objections to the magistrate's decision. Accordingly, having previously deferred ruling on claimant's motion, we now deny claimant's motion for leave to supplement the stipulated evidence.
 {¶ 5} Former R.C. 4123.58(C) provided, in part, that "[t]he loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, constitutes total and permanent disability, to be compensated according to this section."
 {¶ 6} In its supplemental memorandum, relator calls attention to (2006) Am.Sub.S.B. No. 7 and its amendment of R.C. 4123.58, effective June 30, 2006. (2006) Am.Sub.S.B. No. 7 rewrote division (C) of R.C. 4123.58, and it made other changes to R.C.4123.58. Relator specifically calls attention to division (C)(1) of R.C. 4123.58, which now, in part, provides that "the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts[.]" According to relator, "the spirit" of R.C. 4123.58(C)(1), as amended, should permit application of revised R.C. 4123.58 to our review of the commission's award of statutory PTD compensation to claimant based on State ex rel.Thomas v. Indus. Comm., 97 Ohio St.3d 37, 2002-Ohio-5306, reconsideration denied, 97 Ohio St.3d 1486, 2002-Ohio-6866, and to our review of relator's complaint in mandamus.
 {¶ 7} "A familiar principle of statutory construction * * * is that a statute should not be construed to impair pre-existing law in the absence of an explicit legislative statement to the contrary." Shrader v. Equitable Life Ass.Soc. (1985), 20 Ohio St.3d 41, 44. See, also, R.C. 1.48
(providing that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective").
 {¶ 8} Here, Section 3 of (2006) Am.Sub.S.B. No. 7 expressly provides:
This act applies to all claims pursuant to Chapters 4121., 4123., 4127., and 4131. of the Revised Code arising on and after the effective date of this act, except that division (H) of section 4123.512 as amended by this act also applies to claims that are pending on the effective date of this act.
 {¶ 9} In the present case, claimant's claim arose before June 30, 2006, the effective date of (2006) Am.Sub.H.B. No. 7, and R.C. 4123.512(H) is irrelevant to the matter at issue. Therefore, absent an explicit legislative statement in (2006) Am.Sub.H.B. No. 7 that provides for retrospective application of R.C.4123.58(C)(1), as amended, to claims that arose before the effective date of (2006) Am.Sub.H.B. No. 7, relator's contention that R.C. 4123.58(C)(1), as amended, should be applied to the present matter is unconvincing. See R.C. 1.48; Shrader, supra.
 {¶ 10} In its objections, relator reasserts issues it raised before the magistrate. Specifically, relator asserts: (1) the commission abused its discretion by finding that claimant was entitled to statutory PTD compensation because the record does not contain some evidence to support such a finding; and (2) the commission failed to consider all proper and timely filed evidence when it reached its decision. Relator further contends that the magistrate incorrectly applied Thomas, supra, to the facts of this case, made evidentiary assumptions that are not supported by the record, and gave undue deference to the commission's decision.
 {¶ 11} To be entitled to a writ of mandamus, relator must show (1) a clear legal right to the relief requested; (2) respondent is under a clear legal duty to perform the act sought; and (3) relator has no plain and adequate remedy at law. Stateex rel. Fain v. Summit Cty. Adult Probation Dept. (1995),71 Ohio St.3d 658, citing State ex. rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589.
 {¶ 12} "`[D]etermination of disputed factual situations is within the final jurisdiction of the Industrial Commission, and subject to correction by action in mandamus only upon a showing of abuse of discretion.'" State ex rel. Morris v. Indus. Comm.of Ohio (1984), 14 Ohio St.3d 38, 39, quoting State ex rel.Haines v. Indus. Comm. (1972), 29 Ohio St.2d 15, 16; State exrel. Posey v. Indus. Comm. (1984), 12 Ohio St.3d 298, 299. An abuse of discretion occurs "where there is no evidence upon which the commission could have based its factual conclusion."Morris, supra, at 39, citing Posey, supra; State ex rel.Questor Corp., Evenflo Div. v. Indus. Comm. (1982),70 Ohio St.2d 240, 241, citing State ex rel. Teece v. Indus. Comm.
(1981), 68 Ohio St.2d 165.
 {¶ 13} In State ex rel. Internatl. Paper v. Trucinski,106 Ohio St.3d 203, 2005-Ohio-4557, the Supreme Court of Ohio reaffirmed the vitality of Thomas, supra. Id. at ¶ 5-6. TheTrucinski court stated, in part:
Statutory PTD is established by "[t]he loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof." R.C. 4123.58(C). In 2002, Thomas
declared the hand and arm to be distinct body parts for purposes of R.C. 4123.58(C). Consequently, the loss of an entire single extremity can equate to the loss of two body parts and statutory PTD.
Id. at ¶ 4. See, also, Thomas, supra, at ¶ 6 (agreeing with this court's reasoning in State ex rel. Thomas v. Indus. Comm.
[Dec. 19, 2000], Franklin App. No. 00AP-289); State ex rel.Adams v. Aluchem, Inc., 104 Ohio St.3d 640, 2004-Ohio-6891, at ¶8 (stating, in part, that "Thomas must be applied retrospectively because we did not expressly state that the decision was to be applied only prospectively").
 {¶ 14} Therefore, under Thomas, the loss of an entire single extremity can equate to the loss of two body parts under former R.C. 4123.58(C), and thus entitle a claimant to statutory PTD compensation under former R.C. 4123.58. Based upon our independent review, we find that in his conclusions of law the magistrate correctly construed Thomas.
 {¶ 15} Furthermore, we also find that the magistrate correctly concluded that some evidence supports the commission's award of statutory PTD compensation. Here, the commission relied upon reports of Dr. C. Alan Tracy, and Dr. Richard Kepple.
 {¶ 16} In a letter dated March 28, 2005, Dr. Tracy stated, in part:
I recently examined Maiso Alexander on March 28, 2005, and he continues to have significant findings of a complex regional pain syndrome with stiffness, pain, and hyperhidrosis of the left hand. * * *
* * * It is my opinion that Mr. Alexander has total loss of function of the left upper extremity and is disabled as a result of that.
 {¶ 17} Following an examination of claimant on October 12, 2004, Dr. Kepple reported, in part:
On examination today, range of motion of Mr. Alexander's left shoulder, elbow and writ was minimal in all planes and was accompanied by severe of [sic] pain. In addition, Mr. Alexander is unable to flex or extend any of the digits of the left hand and cannot, therefore, grip or grasp with his left hand. There has been worsening of the condition of Mr. Alexander's left upper extremity since my evaluation in April 2002.
 {¶ 18} In a later report, which followed an examination of claimant on February 22, 2005, Dr. Kepple stated, in part, that "Mr. Alexander is unable to return to work as a bulldozer operator as he cannot use his left upper extremity."
 {¶ 19} Notwithstanding relator's contention to the contrary, we do not find that the magistrate made an evidentiary assumption that is not supported by the record when he concluded that Dr. Kepple's later reference to claimant's inability to use his "left upper extremity" was meant to include those specific body parts of the left upper extremity cited in Dr. Kepple's report of October 12, 2004. (See Magistrate's Decision, Appendix A, ¶ 55.)
 {¶ 20} We find these medical reports constitute some evidence upon which the commission could have based its award of statutory PTD compensation to claimant. We therefore cannot conclude that the commission abused its discretion.
 {¶ 21} Finally, relying upon State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327, relator argues that the commission failed to consider all proper and timely filed evidence based on the commission's failure to reference certain reports in it is order.
 {¶ 22} Relator's contention is unconvincing. Here, the commission only listed evidence it relied upon, and it did not list evidence it considered. In State ex rel. Rothkegel v.Westlake (2000), 88 Ohio St.3d 409, reconsideration denied,89 Ohio St.3d 1443, the Supreme Court explained:
* * * Fultz applies only where the disputed PTD order lists the evidence considered and omits a report from that list. In such a case, the evidence omitted is presumed to have been ignored. Where, as here, the commission lists only the evidence relied upon, omission does not raise the presumption that the evidence was overlooked.
Id. at 410.
 {¶ 23} Quoting State ex rel. Buttolph v. Gen. Motors Corp.,Terex Div. (1997), 79 Ohio St.3d 73, 77, the Rothkegel court further explained:
"Although the commission is required to consider all evidence properly before it, it is not required to list each piece of evidence that it considered in its order. Under [State ex rel.]Mitchell [v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481,483-484 * * *], the commission is required to enumerate in its order `only that evidence which has been relied upon to reach their conclusion * * *.' (Emphasis added.) * * * There is no requirement that the commission list all evidence considered. * * *
"Nor does Fultz impose such a requirement. Fultz holds, in effect, merely that if the commission unnecessarily endeavors to enumerate the evidence considered, it must appear from its order that all evidence was given consideration. Thus, if the commission list only the evidence relied upon, without any attempt to enumerate the evidence considered Fultz does not apply. * * *"
Id. at 411. See, also, State ex rel. Lovell v. Indus. Comm.
(1996), 74 Ohio St.3d 250, 253 (wherein, after finding that unlike Fultz, the order in that case did not unnecessarily enumerate the evidence considered, the court reasoned that "[t]herefore, the presumption of regularity controls and consideration of claimant's deposition must be presumed"); Stateex rel. Brady v. Indus. Comm. (1986), 28 Ohio St.3d 241, 242
(observing that decisions that come to the Supreme Court of Ohio from the commission have a presumption of regularity).
 {¶ 24} Based upon our independent review, we find that the magistrate correctly applied the relevant law to the facts of this case when he concluded that it may be presumed that the commission properly considered the evidence before it and that the commission's order did not violate Fultz.
 {¶ 25} For the foregoing reasons, we conclude that the magistrate properly discerned the pertinent facts and properly applied the relevant law to those facts when he recommended denial of relator's request for a writ of mandamus. Therefore, we adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law.
 {¶ 26} Accordingly, having adopted the magistrate's decision as our own, we overrule relator's objections to the magistrate's decision, and deny relator's request for a writ of mandamus. Additionally, as stated above, we also deny claimant's motion for leave to supplement the stipulation of evidence.
Objections overruled; motion denied; writ denied.
Travis and Whiteside, JJ., concur.
Whiteside, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Consolidation Coal Company, :
Relator, :
v. : No. 05AP-581
Maiso Alexander and : Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on November 15, 2005 Hanlon, Duff, Estadt McCormick Co., LPA, and Gerald P.Duff, for relator.
Larrimer Larrimer, and Thomas L. Reitz, for respondent Maiso Alexander.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 27} In this original action, relator, Consolidation Coal Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of statutory permanent total disability ("PTD") compensation under R.C. 4123.58(C) to respondent Maiso Alexander, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 28} 1. On November 23, 1998, respondent Maiso Alexander ("claimant") sustained an industrial injury while employed as a heavy equipment operator for relator, a self-insured employer under Ohio's workers' compensation laws. On that date, claimant injured his left wrist as he attempted to pull himself onto a bulldozer by grabbing the handhold. He reported a sudden snapping or popping sensation in his left wrist followed by persistent pain and swelling in the wrist.
 {¶ 29} 2. In May 1999, C. Alan Tracy, M.D., excised a ganglion cyst from claimant's left wrist.
 {¶ 30} 3. In 1999, Dr. Stanton-Hicks diagnosed reflex sympathetic dystrophy and treated claimant with stellate ganglion blocks in the axillary area and nerve blocks in his hand.
 {¶ 31} 4. In October 1999, Dr. Tracy surgically removed a neuroma from claimant's left wrist.
 {¶ 32} 5. In January 2002, Dr. Tracy implanted a nerve stimulator to stimulate the left median and radial nerves.
 {¶ 33} 6. The industrial claim is allowed for "overexertion of left wrist; ruptured tendon left wrist; reflex sympathetic dystrophy; loss of use of left arm," and is assigned claim number 98-626863.
 {¶ 34} 7. On March 2, 2004, claimant was examined at relator's request by Paul T. Hogya, M.D., who reported:
Physical Examination: * * *
Examination of the cervical spine and left shoulder reveals no tenderness, guarding or range of motion loss. His surgical scars related to implantation of the stimulator are well healed, without swelling or drainage.
The left elbow reveals no swelling, tenderness or deformity. He has mild range of motion loss related to his associated wrist and hand complaints only. There is no crepitation. He does have edema along the wrist and hand. There is increased sweating to the palm of the hand. He has good capillary refill. There is alloydenia and hyperpathia. He can oppose a thumb to the index finger and has minimal gripping. He has minimal motion of the wrist and lacks much in the way of extension of the thumb or remaining digits.
* * *
In my opinion, the claimant cannot return to his former position of employment as a heavy equipment operator. At this point in time, restrictions will be limited to primarily right hand work only. He is not able to use the left hand for any repetitive gripping, lifting, pushing or pulling. He may be able to do some minimal pinching on an occasional basis or use the left arm in a minimal supporting role, such as lifting light and the bulky weight with the right arm.
 {¶ 35} 8. On October 12, 2004, at relator's request, claimant was examined by Richard N. Kepple, M.D., who reported:
On examination today, range of motion of Mr. Alexander's left shoulder, elbow and wrist was minimal in all planes and was accompanied by severe of [sic] pain. In addition, Mr. Alexander is unable to flex or extend any of the digits of the left hand and cannot, therefore, grip or grasp with his left hand. There has been worsening of the condition of Mr. Alexander's left upper extremity since my evaluation in April 2002.
Based on my evaluation today, it is my opinion that Mr. Alexander has lost total use of his left upper extremity.
 {¶ 36} 9. On January 5, 2005, claimant filed an application for PTD compensation or, in the alternative, for statutory PTD compensation.
 {¶ 37} 10. On February 22, 2005, at relator's request, claimant was again examined by Dr. Kepple, who reported:
Examination of the left upper extremity revealed minimal generalized soft tissue swelling from the shoulder to the hand. There was a shininess to the skin and the skin was cool to the touch. There was marked hypersensitivity to light touch from the shoulder to the hand. No manipulation of Mr. Alexander's left upper extremity was attempted. He was only able to move his left shoulder 5-10° in all planes. The left elbow could be moved in an arc of only 35°. Mr. Alexander was unable to move his left wrist in any direction.
* * *
Relative to claim #98-625863, the condition of Mr. Alexander's left upper extremity has remained unchanged, despite extensive treatment, for at least three years. As it is unlikely that additional treatment will result in any significant improvement, the allowed conditions of this claim have reached maximum medical improvement and the conditions relative to Mr. Alexander's left upper extremity are permanent. Mr. Alexander's subjective complaints were consistent with objective clinical findings and have not changed significantly since 2002.
* * *
I stated in my report, dated April 3, 2002, that I do not believe Mr. Alexander is permanently and totally disabled due to the allowed conditions of his November 23, 1998 Workers' Compensation claim. This opinion remains unchanged. Mr. Alexander is unable to return to work as a bulldozer operator as he cannot use his left upper extremity. This inability [is] due solely to the allowed conditions of the November 1998 claim. Mr. Alexander can, however, return to work in a capacity in which the work activities are confined to the right upper extremity, with no use of the left. An immobilizing device would be necessary to protect the left upper extremity. In my opinion, Mr. Alexander is capable of sustained remunerative employment under these restrictions. Vocational rehabilitation to train him in one-handed work would be appropriate.
 {¶ 38} 11. On March 28, 2005, claimant was examined by Dr. Tracy, who reported:
I recently examined Maiso Alexander on March 28, 2005, and he continues to have significant findings of a complex regional pain syndrome with stiffness, pain, and hyperhidrosis of the left hand. Current therapy consists of an implantable peripheral nerve stimulator and pharmacologic management. His implantable nerve stimulator is still functional and he is under Dr. Liebeskind's management for pain medication.
* * * It is my opinion that Mr. Alexander has total loss of function of the left upper extremity and is disabled as a result of that. His condition will not improve to the point of having any functional use of the left upper extremity and because of his chronic pain condition he is not employable.
 {¶ 39} 12. Relator submitted a vocational report from Dana Dagostino dated April 1, 2005. In the report, Dagostino concludes:
Based on the available data of Mr. Alexander's physical capabilities, it is the opinion of this consultant, that pursuit of employment is feasible for Mr. Alexander at this time, since positions do exist in which he could perform.
 {¶ 40} 13. Following an April 5, 2005 hearing, a staff hearing officer ("SHO") issued an order granting statutory PTD compensation under R.C. 4123.58(C). The SHO order states:
In accordance with ORC 4123.58(C), statutory permanent and total disability compensation is to be paid to the injured worker, regardless of whether he ever returns to, or has returned to, any work activity. Payment of statutory permanent and total disability compensation is to be made, less the amount of compensation that is prohibited with the concurrent payment of this award.
This decision is based upon the reports of Drs. Kepple and Tracy, both of whom conclude that the injured worker has sustained the permanent and total loss of use of the left arm as a direct result of the allowed industrial injury. On 02/22/2005, Richard N. Kepple, M.D., stated that the injured worker can return to some type of work, as long as the "work activities are confined to the right upper extremity, with no use of the left". He added that "an immobilizing device would be necessary to protect the left upper extremity". On 03/28/2005, C. Alan Tracy, M.[D]., concurred with Dr. Kepple's assessment by stating:" It is my opinion that Mr. Alexander has total loss of function of the left upper extremity and is disabled as a result of that. His condition will not improve to the point of having any functional use of the left upper extremity and because of his chronic pain condition he is not employable".
This order is consistent with the case of State ex rel. Thomasv. Industrial Commission (2002), 97 Ohio St. 3d 37, which held that the loss of an entire extremity constitutes the loss of two or more members as set forth in ORC 4123.58(C).
 {¶ 41} 14. On June 1, 2005, the three-member commission mailed an order denying relator's request for reconsideration of the SHO order of April 5, 2005.
 {¶ 42} 15. On June 6, 2005, relator, Consolidation Coal Company, filed this mandamus action.
Conclusions of Law:
 {¶ 43} Several issues are presented: (1) should State exrel. Thomas v. Indus. Comm., 97 Ohio St.3d 37, 2002-Ohio-5306, be overruled; (2) under Thomas, is the statutory PTD award supported by some evidence upon which the commission relied; (3) did the commission fail to consider Dr. Hogya's report; and (4) did the commission abuse its discretion by failing to address the vocational analysis presented in the Dagostino report?
 {¶ 44} The magistrate finds: (1) the Supreme Court of Ohio recently refused to overrule Thomas; (2) under Thomas, the statutory PTD award at issue here is supported by some evidence upon which the commission relied; (3) there is an unrebutted presumption that the commission considered Dr. Hogya's report and rejected it; and (4) the commission's grant of statutory PTD rendered irrelevant any consideration of the vocational evidence of record.
 {¶ 45} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 46} R.C. 4123.58(C) states: "The loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, constitutes total and permanent disability, to be compensated according to this section."
 {¶ 47} In Thomas, the court declared the hand and arm to be distinct body parts for purposes of R.C. 4123.58(C). Consequently, the loss of an entire single extremity can equate to the loss of two body parts and statutory PTD. Thomas.
 {¶ 48} On September 14, 2005, the Supreme Court of Ohio, inState ex rel. Internatl. Paper v. Trucinski,106 Ohio St.3d 203, 2005-Ohio-4557, refused to overrule Thomas on stare decisis grounds.
 {¶ 49} Accordingly, the Supreme Court of Ohio, in Internatl.Paper, has answered the first issue that relator presents.Thomas remains good law.
 {¶ 50} Turning to the second issue, as relator points out, inThomas, Dr. Burge stated: "`I feel that this patient has lost complete and total use of his right hand, wrist, elbow andshoulder.'"(Relator's brief, at 7; Emphasis sic.) Based upon Dr. Burge's statement in the Thomas case, relator suggests that the Thomas court held that the medical evidence supporting a statutory PTD award under R.C. 4123.58(C) for loss of a hand and arm of the same limb must specifically indicate that the claimant has lost the arm, wrist, elbow and shoulder. Relator misconstruesThomas.
 {¶ 51} In Thomas, there was no dispute that the claimant had lost the use of his right hand and arm. The issue was whether the loss of use of the hand and arm of the same limb constitutes statutory PTD under R.C. 4123.58(C). The Thomas court held that the hand and arm are distinct body parts for purposes of R.C.4123.58(C).
 {¶ 52} Contrary to relator's suggestion, Thomas did not impose a requirement that the claimant show loss of the shoulder.
 {¶ 53} Nevertheless, in reviewing the October 12, 2004 report of Dr. Kepple, we find that Dr. Kepple did discuss the left hand, wrist, elbow and shoulder, contrary to relator's contention here. Again, on October 12, 2004, Dr. Kepple wrote:
On examination today, range of motion of Mr. Alexander's left shoulder, elbow and wrist was minimal in all planes and was accompanied by severe of [sic] pain. In addition, Mr. Alexander is unable to flex or extend any of the digits of the left hand and cannot, therefore, grip or grasp with his left hand. There has been worsening of the condition of Mr. Alexander's left upper extremity since my evaluation in April 2002.
Based on my evaluation today, it is my opinion that Mr. Alexander has lost total use of his left upper extremity.
 {¶ 54} Clearly, notwithstanding that relator misconstruesThomas, Dr. Kepple clearly gives the specificity that relator seeks to have this court impose.
 {¶ 55} In his February 22, 2005 report, upon which the commission specifically relies, Dr. Kepple states: "[T]he condition of Mr. Alexander's left upper extremity has remained unchanged, despite extensive treatment, for at least three years." (Emphasis added.) It is clear that Dr. Kepple's February 22, 2005 reference to the "left upper extremity" was meant to include those specific body parts of the left upper extremity expressed in his October 12, 2004 report.
 {¶ 56} Again, Dr. Kepple gives to relator the specificity that relator seeks to have this court impose.
 {¶ 57} The third issue is whether the commission failed to consider Dr. Hogya's report. As relator points out, the SHO order of April 5, 2005 does not mention Dr. Hogya's report. The SHO's order states that it is based upon the reports of Drs. Kepple and Tracy. Based upon that observation, relator concludes that this court must find that the commission failed to consider Dr. Hogya's report. Relator is incorrect.
 {¶ 58} Relator's reliance on State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327, is misplaced.
 {¶ 59} Explaining its earlier holding in Fultz, the Supreme Court of Ohio, in State ex rel. Lovell v. Indus. Comm. (1996),74 Ohio St.3d 250, states:
State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481 * * *, directed the commission to cite in its orders the evidence on which it relied to reach its decision. Reiterating the concept of reliance, State ex rel. DeMint v.Indus. Comm. (1990), 49 Ohio St.3d 19, 20 * * * held:
"Mitchell mandates citation of only that evidence relied
on. It is does not require enumeration of all evidenceconsidered." (Emphasis original.)
Therefore, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings (State ex rel. Brady v. Indus. Comm.
[1989], 28 Ohio St.3d 241 * * *) gives rise to a second presumption — that the commission indeed considered all the evidence before it. That presumption, however, is not irrebuttable, as Fultz demonstrates.
Id. at 252. (Emphasis sic.)
 {¶ 60} In Fultz, the commission issued an order that unnecessarily enumerated the evidence considered. Because the commission's listing of the evidence considered failed to mention two relevant vocational reports, the court found an abuse of discretion.
 {¶ 61} Here, unlike Fultz, the commission did not unnecessarily enumerate the evidence it considered. Accordingly, the presumption is that the commission indeed considered Dr. Hogya's report and rejected it.
 {¶ 62} The fourth issue is whether the commission abused its discretion by failing to address the vocational analysis presented in the Dagostino report.
 {¶ 63} An award of statutory PTD compensation under R.C.4123.58(C) does not preclude reemployment. State ex rel.Szatkowski v. Indus. Comm. (1988), 39 Ohio St.3d 320, 322. That is, an ability to perform sustained remunerative employment or the actual performance of sustained remunerative employment is not legally inconsistent with an award of compensation under R.C.4123.58(C).
 {¶ 64} Relator's insistence that the commission abused its discretion by failing to address the nonmedical factors, and particularly the vocational analysis presented in the Dagostino report, appears to be premised upon a misconception of statutory PTD. Ordinarily, vocational factors are irrelevant in the determination of statutory PTD because the ability or inability to work is irrelevant to the determination of whether the claimant has sustained the loss of any two of the body parts enumerated at R.C. 4123.58(C).
 {¶ 65} While the loss of any two of the body parts enumerated at R.C. 4123.58(C) may produce an inability to perform sustained remunerative employment, that it does not produce such inability does not detract from the statutory PTD award. Szatkowski,
supra.
 {¶ 66} In short, because the commission was not required to address the nonmedical factors in determining whether claimant is statutorily permanently and totally disabled, it was not required to even consider the Dagostino report in determining that the claimant is statutorily permanently and totally disabled.
 {¶ 67} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Civ.R. 53 was amended, effective July 1, 2006. Pursuant to Civ.R. 86(CC), the new amendments to Civ.R. 53 "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."